## GILBERT A. WATKINS v. NELSON GREEN.

*Adverse possession—Right of entry—Tenants in common—Life estate—Payment of taxes—Estoppel.*

1. One who purchases an undivided interest in lands, and enters as a stranger to the rights of his cotenants, is not estopped from setting up as against them an adverse title that originated before his purchase; citing *Blackwood v. Van Vleit,* 30 Mich. 118; *Campau v. Dubois,* 39 Id. 274; *Sands v. Davis,* 40 Id. 14.

2. Where the owner of a life estate and of an undivided interest in the fee of land permits an adverse claimant to remain in undisturbed possession until such possession ripens into a valid title, neither he nor his grantees can separate his interests in the land, under the plea that, as to some of them, he had not the right of entry.

3. There can be no adverse possession against one whose right of entry is not complete; citing *Cook v. Knowles,* 38 Mich. 316; *Marble v. Price,* 54 Id. 466.

4. Where, by reason of the failure of a life tenant to pay valid taxes assessed against the land, it is sold under valid proceed-

| | |
|---|---|
| 101 | 493 |
| 106 | 314 |

| | |
|---|---|
| 101 | 493 |
| s60NW | 44 |
| 129 | 5348 |

| | |
|---|---|
| 101 | 493 |
| s60NW | 44 |
| 131 | 5559 |

| | |
|---|---|
| 101 | 493 |
| 139 | 1263 |

| | |
|---|---|
| 101 | 493 |
| 141 | 2628 |

| | |
|---|---|
| 101 | 493 |
| 145 | 1301 |

ings, title passes to the purchaser, and the only remedy of the remainder-man is against the owner of the life estate.

5. It is the duty of the holder of a life estate to pay all taxes that may be assessed upon the land subsequent to the creation of the estate, though before he became the owner thereof; and, neglecting this duty, he cannot assert an adverse claim founded upon tax titles issued by reason of such default.

Error to Wayne. (Hosmer, J.) Argued January 19, 1894. Decided September 25, 1894.

Covenant. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*George W. Radford* (*Edward A. Barnes,* of counsel), for appellant.

*Jay Fuller,* for defendant.

GRANT, J. The defendant executed to plaintiff a warranty deed of certain lands. This action is brought to recover for alleged breaches of the covenants of warranty.

The title to the property was originally in one Toussaint L'Esperance, who died testate in 1842, leaving a widow and six children. He devised to his widow one-third of the land in fee, and a life estate in the remainder. Upon the termination of the life estate the two-thirds were devised in equal shares to his six children.

Prior to 1853 the land had been unoccupied, except that the timber had been removed. In October, 1850, the entire land was sold for the taxes of 1848, and was again sold in October, 1851, for the taxes of 1849. October 21, 1851, the Auditor General issued his deed to Edward Meyers upon the first sale, and on November 16, 1852, a second deed upon the sale of 1851. The first sale was to one Williams, who assigned to Meyers. The second sale was direct to Meyers. Two of the children died, leaving

no issue; one is dead, leaving one child; and three are still living. The widow died May 2, 1887.

July 19, 1851, Meyers obtained by quitclaim deed the interest of Edward, one of the six children, who was the owner of an undivided one-ninth. May 23, 1854, the widow and one of the children quitclaimed their interests to one Nathan H. White, who, on July 1 of the same year, conveyed the land by quitclaim deed to one Daniel Ball. In 1856 Ball reconveyed to White, who deeded to one Boltwood in 1857. June 4, 1858, the interests of two of the other children passed by guardian's deed to one Dow, who in turn conveyed these interests to Boltwood. October 3, 1853, the entire land was sold for the taxes of 1851 and 1852. Two deeds were issued upon these sales to one Stevens, who on July 2, 1855, conveyed the interest acquired by these deeds to Ball. The tax titles passed to Boltwood under the deeds from Ball to White and from White to Boltwood already referred to. May 17, 1887, Boltwood conveyed to James B. Judson. In 1886 Judson purchased the interest of the two remaining heirs of Toussaint L'Esperance.

There is no competent evidence that Meyers ever went into possession of the land, or was intrusted with its care and supervision, either by L'Esperance or his widow. The only testimony upon this subject is given by one of the children of L'Esperance, who testified to his understanding from conversations he had with his mother. · Such testimony was hearsay and incompetent.

July 4, 1853, Meyers conveyed the entire land to one John Hanley by warranty deed. The land was then in the state of nature, except that the timber had been removed, and was covered with water and willows. Hanley immediately went into possession with his family, drained and fenced it, and the following year built a house, barn, and other buildings upon it, and continued in such pos-

session until he conveyed by warranty deed to defendant, Green, October 13, 1879; meanwhile paying the taxes and cultivating and improving the land. Green executed a warranty deed to plaintiff, Watkins, January 8, 1881. Green occupied the land, through tenants, until the conveyance to plaintiff.

Mr. Judson commenced an action of ejectment against the plaintiff, who notified defendant of Judson's claim, and demanded that he defend the suit. This defendant refused, claiming that he had a good title by adverse possession. Plaintiff then purchased the interests held by Judson, and brought this suit.

The court below directed a verdict for the defendant, holding:

"1. That John Hanley went into possession of the property in dispute under a claim of title, *i. e.*, the Meyers tax deeds and his deed from Meyers, and that under this claim he held an open, notorious, hostile, distinct, and adverse possession for over 27 years.

"2. That, of the 'patent title,' defendant obtained one-ninth by his deed from Meyers.

"3. That the statute of limitations had run in favor of Hanley and his successors, against the widow, as to the three-ninths willed to the widow absolutely.

"4. That there was a merger of the life estate and the three-ninths of the estate obtained from Enos, Philip, and Charles, and passing to Boltwood on June 12, 1860, and that the statute of limitations had run against the three-ninths, in favor of Hanley and his successors.

"5. That the Sears Stevens tax titles were paramount titles, and, when purchased by Ball, extinguished the two-ninths of the 'patent title' still held by Elizabeth Crouch and Josephine Page, and the right of entry accrued at once to Boltwood, and that the statute of limitations had run against the entire 'patent title,' in favor of Hanley and his successors.

"6. That the tax titles purchased by Meyers were paramount to the title of the children and that of the widow, and that Hanley's possession under the paramount title extinguished the title of the widow and children to the property in question."

Meyers, at the time of the purchase of his one-ninth interest from Edward L'Esperance, was not in possession, nor did he take possession either under that deed or his tax deeds. He occupied no relation of trust or confidence towards the widow and heirs. He was therefore under no obligation to pay their taxes, or to buy up outstanding interests or titles for their benefit. Hanley went into possession under his warranty deed from Meyers, claiming the entire title, and under a deed which purported to convey the entire and absolute fee. It cannot be said that he accepted this deed charged with any duty to protect the life estate, or the undivided interests of any of the tenants in common. Hanley's possession at once became open, notorious, hostile, and exclusive to all claiming any interest in the land. That possession continued in Hanley and his grantees for nearly 40 years, and more than 20 years after the minor children became of age. It is established in this State that one who purchases an undivided interest in lands, and enters as a stranger to the rights of his cotenants, is not estopped from setting up against them an adverse title that originated before his purchase. *Blackwood v. Van Vleit,* 30 Mich. 118; *Campau v. Dubois,* 39 Id. 274; *Sands v. Davis,* 40 Id. 14.

Such entry operated as an ouster of all those having an interest in the land and the right of entry. The widow was then entitled to the possession of one-third by virtue of her one-third ownership, and to the possession and enjoyment of the other two-thirds by virtue of her life estate. Clearly, therefore, her rights and those of her grantee of these two interests were lost by adverse possession, and the title vested in the defendant.

When Ball purchased the interest of the widow and one of the children, and the tax titles for the taxes of 1851 and 1852, which were then outstanding, all these titles

101 MICH.—32.

became merged in him. He was then entitled to possession, as against Hanley. The right of entry became complete, and the statute of limitations began to run. By the deed from Ball to White, dated in 1856, and from White to Boltwood, in 1857, Boltwood succeeded to the same rights and interests, and was entitled to possession. Boltwood, by his purchase of the interests of Enos and Philip in 1860, became possessed of the entire title, including the life estate, except the one-ninth purchased by Meyers and the two-ninths outstanding in Josephine and Elizabeth. He took no steps to enforce his rights, and the defendant, by the adverse possession of himself and his grantors, obtained title to all the interests owned by Boltwood. Boltwood, being the owner of the life estate, was obligated to pay the taxes, and protect the interests of the re-mainder-men. If he chose to permit Hanley and his grantees to remain in adverse and undisturbed possession till such possession ripened into a valid title, neither he nor his grantees can now separate his interests, under the plea that, as to some of the interests, he had not the right of entry.

Josephine and Elizabeth, or their grantees, acquired no right of entry until the death of their mother, in May, 1887, when the life estate terminated. How. Stat. § 8700. As to these interests, therefore, there has been no adverse holding, so as to convey title. *Cook v. Knowles*, 38 Mich. 316; *Marble v. Price*, 54 Id. 466.

If, therefore, the tax deeds to Meyers are void, there was a breach of the defendant's covenants of warranty, for which the plaintiff is entitled to damages. Of course, if the tax deeds obtained by Meyers are valid, they cut off the entire title of the widow and heirs. Where the owner of the life estate neglects to pay the taxes assessed upon the land, and it is sold for valid taxes and under valid

proceedings, title passes to the grantee, and the only remedy of the remainder-man is against the life owner. |

Judgment must be reversed, and a new trial ordered.

The other Justices concurred.