King v. Boettcher.

---

LENA KING, APPELLANT, V. CHARLES H. BOETTCHER ET AL., APPELLEES.

FILED MAY 29, 1914.  No. 17,463.

1. **Life Estates:** PAYMENT OF TAXES. ''As between the life tenant and the owner of the fee, it is the duty of the former to pay all taxes charged against the land during the continuance of his estate.'' *Spiech v. Tierney*, 56 Neb. 514. *Disher v. Disher*, 45 Neb. 100.

2. ———: ———: LIABILITY OF PURCHASER. The purchaser of the life estate assumes by such purchase the burden of paying the taxes which the law imposed upon his grantor, and may not escape such burden by the claim that he was not liable for the taxes until he made the purchase.

3. **Wills:** CONSTRUCTION: RIGHTS OF SURVIVING REMAINDERMEN. Where the will of the testatrix authorized the executor to sell certain lands in Alabama, and to invest the proceeds of the sale elsewhere, and

accordingly such real estate was sold and the proceeds invested in a lot in the city of Lincoln, *held,* that the conditions of the will touching the right of survivorship between remaindermen will be applied and carried out as to the property purchased.

4. **Deeds:** ESTATE OF PURCHASER: LIFE ESTATE. Where the purchaser of a life estate in real property received a quitclaim deed thereto which neglected to recite that . the . interest conveyed was the life estate of the grantor, the purchaser may not lawfully claim a greater interest in the property than the grantor had to sell.

5. **Vendor and Purchaser:** NOTICE: RECITALS IN DEED. All persons claiming an interest in or a lien upon real estate are bound to take notice of the recitation in a duly recorded deed in the chain of title of their grantor. *Mathews v. Jones,* 47 Neb. 616; *Albers v. Koseluh,* 68 Neb. 522.

6. **Tax Sale:** REDEMPTION. The scavenger act should receive a liberal construction in favor of the owner where he seeks to redeem from the sale made, and he should be allowed to redeem where full and actual compliance with the statute has not been observed. · *Ambler v. Patterson,* 80 Neb. 570, 575.

7. ———: ———: NOTICE. Notice of the time when the redemption of land from tax sale will expire must be given by the tax purchaser or his assignees before the expiration of the time to redeem. *Ambler v. Patterson,* 80 Neb. 570.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed in part and affirmed in part.*

*Morning & Ledwith,* for appellant.

*F. A. Boehmer & Son, Frank E. Edgerton* and *A. W. Lane, contra.*

HAMER, J.

The plaintiff, Lena King, seeks by this action to perfect her title to lot 3, block 85, in Lincoln, Lancaster county, Nebraska. Frances B. O'Reilly died testate in Mobile, Alabama, her home, in February, 1887. Her will was probated. By its provisions the testatrix devised her property in Mobile, Alabama, to Charles I. Green, as trustee, so that her son, Ignatius J. O'Reilly, the father of this plaintiff, should have the use thereof during his lifetime,

and after his death the remainder to descend to his children or the survivor or survivors of them living at the time of the father's death, share and share alike.

In 1891, or thereabouts, the family homestead in Mobile, Alabama, was sold, and the proceeds were invested by the trustee in lot 3, block 85, Lincoln, Lancaster county, Nebraska. That is the property involved in this controversy. The deed to the Lincoln property conveyed the title to Ignatius J. O'Reilly for life, and after his death to his two children, Lena O'Reilly, now Lena King, the plaintiff herein, and to her brother, John O'Reilly, now deceased, share and share alike. It is claimed by the plaintiff that this deed failed to provide, as the will directed, that the remainder estate should vest in the survivor of the children of the said Ignatius J. O'Reilly. The will provided that Ignatius O'Reilly should have the use of the Alabama property during his lifetime, and after his death this homestead was to go to the children of Ignatius O'Reilly, born and to be born of his then wife, or to the survivor or survivors of them, living at the time of the death of Ignatius J. O'Reilly, share and share alike. It was provided in the will that the homestead might be sold for the purposes of reinvestment in real estate in some other state if desired. Such request was made, and the executor and trustee conveyed said homestead, and took the proceeds of the same and invested such proceeds in the real estate in controversy. Lena O'Reilly and her brother, John O'Reilly, were the heirs at law of the remainder estate so disposed of and reinvested in said lot 3, in block 85, Lincoln, Nebraska.

About the year 1896 John O'Reilly, then of the age of about 16 years, died intestate, unmarried, and without issue. The plaintiff is the only surviving child of said Ignatius J. O'Reilly. Said Ignatius J. O'Reilly is divorced from his wife, Addie E. O'Reilly, the mother of the plaintiff, and appellant. Under the terms of the will, if it shall be applied to lot 3, the plaintiff is the owner of the entire remainder estate in said real estate.

96 Neb. 21

When the real estate in Mobile, Alabama, was sold, and the proceeds invested by the trustee in said lot 3, and in accordance with the trust vested in him, the deed which was made to the Lincoln property failed to provide that the remainder estate should vest in the survivor of the children of said Ignatius J. O'Reilly. This was an omission and contrary to the terms of the will. The deed as made is recorded in book 62 at page 175 of the records of Lancaster county on the 6th day of April, 1891.

Ignatius J. O'Reilly was divorced from his wife, Addie E. O'Reilly, subsequent to the probate of the will of said Frances B. O'Reilly, and the plaintiff, Lena King, and her brother, John O'Reilly were the only children born to Addie E. O'Reilly, and were the only children referred to in the will of the said Frances B. O'Reilly.

On the 9th day of March, 1907, Ignatius J. O'Reilly, who was then unmarried, conveyed by quitclaim deed to appellee, Charles H. Boettcher, said lot 3, and omitted to recite in said conveyance that only the life estate which he held in said property was conveyed.

At the time of the said conveyance by Ignatius J. O'Reilly to the said Charles H. Boettcher there was an outstanding "scavenger" tax sale certificate. It was issued on November 2, 1905, to the said Charles H. Boettcher, the purchaser, for the sum of $500.27. Charles H. Boettcher could acquire by the quitclaim deed made to him by Ignatius J. O'Reilly only the life estate which said O'Reilly had in the property. He could acquire only the interest which Ignatius J. O'Reilly had. The defendant Charles H. Boettcher entered into possession of said lot 3 under the said quitclaim deed, and his possession has since been continued until the present time. Ignatius J. O'Reilly and the defendant Charles H. Boettcher failed to pay the taxes against said lot for the years 1899 to 1904, inclusive. They failed to pay the general taxes, as well as special assessments, and permitted the same to become delinquent, and the property was sold for such delinquent taxes.

On July 1, 1905, a petition was filed in the district court for Lancaster county, Nebraska, under chapter 77, art. IX,

Comp. St. 1903. Notice of said action was published, and notice was given that the property was taxed for $516.21, $243.91 being regular taxes for the years 1895, 1899 to 1904, inclusive; that $181.93 was for regular city taxes for said years, and $95.37 for unpaid paving taxes for the paving of the streets of the city in front of said property. Service by publication was had against said property that "I. O'Reilly" is the owner. Said property was taxed in that name. A default decree was entered against said lot 3 in September, 1895; the lot being described as tract No. 0393. After the default decree notice was published under the said "Scavenger Act," and on November 2, 1905, a sale of said lot was made to the defendant Charles H. Boettcher, and said certificate of sale above mentioned was issued to him. On July 25, 1907, an affidavit for publishing a final notice was filed in said tax suit, a copy of which is attached to the plaintiff's petition. Said affidavit is the only affidavit for service by publication which was filed in said suit. A certain notice designated "Final Notice" was published in a newspaper known as the "Legal News," and proof thereof was filed in said tax suit on August 12, 1907. Copies of the same are attached to the petition.

On November 4, 1907, two years and two days after the date of the sale of the said property, notice of confirmation was entered in confirmation record book 1, at page 2. Said notice by its terms fixed the date for the confirmation of the sale of said property as November 9, 1907. No proceedings were had on said suit on said day; but on the 16th day of November, 1907, an order of confirmation was entered in said suit, and on the 16th day of November aforesaid there was issued to Charles H. Boettcher a sheriff's deed which purported to convey said lot to him. This deed was duly recorded. Plaintiff, during the proceedings in said tax suit, claimed to have been a nonresident, and to have been absent from the state of Nebraska, and to have had no knowledge or personal notice of said tax procedure and made no appearance therein. The evidence shows this claim to be sustained. The defendant Boettcher now claims to be the owner in fee of said prop-

erty, and disputes plaintiff's right to the same. He occupies and controls the same adversely to the plaintiff. It is shown that the defendant Boettcher refuses to liquidate and discharge the liens for taxes against said property. He is apparently endeavoring to permit his title to ripen into a fee simple title, and thereby is attempting to cut off plaintiff's interest in the property.

It is claimed by the plaintiff that the tax deed issued to said Charles H. Boettcher is void, and does not convey the title to said real estate to said Charles H. Boettcher, for the reason that it was the duty of the said Boettcher to pay all taxes on said property and to redeem it from said tax sale, he being the life tenant of said real estate. It is further claimed by the plaintiff that said deed is void because no affidavit of service of "Final Notice" by publication addressed to the plaintiff was filed in said suit. It was also claimed that no "Final Notice" as required by the "Scavenger Act" was given to plaintiff or addressed to her in the notice published in said suit; also, because the holder of said certificate on or before the last day of the redemption, November 2, 1907, either by himself or agent, entered in the "Confirmation Record" the date of the decree entered in said suit, and did not enter the time nor the place where the hearing would be had at such confirmation, as required by said act; and because no valid confirmation of said sale was ever had. It is alleged that the defendant Auguste Boettcher is the wife of the defendant Charles H. Boettcher; that Ignatius J. O'Reilly has no interest of any kind in the property, and that the other defendants are tenants. The plaintiff prays that her interest in said property may be established; that the tax liens and party-wall agreements and tax deeds held by Charles H. Boettcher, all of which are alleged to cast a cloud upon her title, may be canceled and the cloud cast thereby removed; that, if the court finds any of the taxes or special assessments to constitute a special lien upon the property, plaintiff may be permitted to redeem; and that the defendant be required to account for rents and profits received by him while in possession of the property; and, if it be found

that plaintiff be liable for taxes on special assessments, that she be permitted to pay all or any part thereof. Plaintiff alleges that she stands ready and willing to abide the judgment and order of the court in that regard. Plaintiff also prays that the warranty deed to Ignatius O'Reilly, dated April 6, 1891, be reformed so as to create in plaintiff the right of survivorship in said real estate upon the death of her brother, John O'Reilly, in harmony with the terms and provisions of said will; and that her fee-simple title or reversionary interest in said real estate be ascertained and established, and that she be decreed to be the owner of the fee-simple title and remainder subject to the life estate of the said Ignatius J. O'Reilly conveyed to the defendant Charles H. Boettcher, as set forth; that said Charles H. Boettcher be adjudged to have no other interest in said property than the life estate of said Ignatius J. O'Reilly, and that the sheriff's deed to Charles H. Boettcher, dated November 16, 1907, be canceled of record, and declared void and not to constitute a cloud upon plaintiff's title in said property, and the tax liens of the defendant Charles H. Boettcher, and all his claims thereunder, be declared as being a payment of taxes due from the life tenant; and that plaintiff's title to said property be quieted in her; and that defendant Charles H. Boettcher be enjoined from asserting any other interest than a life estate therein. To this petition are attached exhibits: On page 12 there is a statement of the amount of taxes that were delinquent at the time of the foreclosure proceedings; on page 13 is the affidavit of defendant Charles H. Boettcher for constructive service and notice of confirmation; on page 14 is exhibit C, the notice that the time for redemption of said tax sale will expire November 2, 1907; on page 15 is the affidavit of publication by D. M. Butler that the notice was published in the "Legal News."

The answer admits that on March 9, 1907, Ignatius O'Reilly gave defendant Boettcher a quitclaim deed for said property, which was recorded in book 139, at page 176; admits that said Ignatius O'Reilly now is and for some years has been in possession of said property under

his tax deed; admits that an action was commenced in the district court for Lancaster county under the so-called scavenger act to foreclose the unpaid taxes on the property; alleges that notice was published in said cause, that the total taxes amounted to $516.21, of which $95.37 was for the street paving; alleges that the notice published was against the property, as well as the person in whose name it was taxed, and who held title thereto and possession thereof; admits that this tract was described as No. 0393, that the decree of foreclosure was duly entered, that notice of the sale for November 2, 1905, was given, at which time defendant Boettcher purchased said property and obtained a certificate of sale therefor, that subsequently an affidavit for notice was filed and that thereafter notice was published, and that thereafter the sale. was confirmed by the district court, and defendant Boettcher obtained a tax deed from the treasurer for said property, which deed was duly recorded; alleges that if the plaintiff had any interest in said property prior to. said sale it was her duty to pay all the taxes and assessments against the property, and that if they were not paid when due the property was liable therefor and subject to sale for such unpaid taxes; admits the conveyance to Ignatius J. O'Reilly. There is in addition a general denial.

In his cross-petition defendant Boettcher alleges: (1) That said lot 3, in block 85, was located so as to be liable for the city and street paving, together with other taxes for state and county purposes; that at the time of the tax sale said lot was liable for its proportionate share of paving tax, amounting to $95.37. (2) That, in addition to said special assessments, said property was liable for the general, state, county and city taxes for the years 1899 to 1904, inclusive; that said taxes at the time of said sale remained unpaid to the amount of $181.93, and that the balance of unpaid taxes then due was for general taxes for state and county. purposes. (3) That an action was begun under the "Scavenger Act" to foreclose on said lot for the amount of $516.21; that due notice was given, and

that said cause was regularly presented upon due and regular notice to the person in whose name the property had been taxed, as well as the property itself; that a decree of foreclosure was entered, notice of sale given, and the property sold to the defendant Boettcher; certificate of sale issued, then notice of time of redemption and date of confirmation given as required by statute; and that after such confirmation a tax deed was issued by order of the court by the treasurer of Lancaster county, whereby all interest and claims of any kind to said property were transferred to the defendant Boettcher, whereby he became and ever since has been the owner of said lot; that, in order to obtain any income from said property, this plaintiff had to spend a great deal of money in improving the property; that he excavated a part of the cellar, put in new foundation and side walls on the south and west sides, placed a new front in the building, put new floors therein, and a new roof thereon, and that in this manner appellee spent $3,000 in repairing the premises, consisting of a store building; that in addition thereto he erected a barn on the rear of said lot of the value of $200. (4) That these expenses were a fair and reasonable value, *and were necessary in order that said property could be rented.* There is a prayer that the petition be dismissed, and the title to the property be quieted in Charles H. Boettcher.

The plaintiff filed a reply to the answer, and an answer to the cross-petition of the defendant Charles H. Boettcher, denying each and every allegation therein.

Because of the fact that the findings of the court are very long, we will only set up such parts of the same as seem most pertinent: "And the court further finds that the plaintiff, Lena King, is now the sole owner of the entire fee title to the remainder estate of the real estate described in plaintiff's amended petition, to wit: Lot 3, block 85, in the city of Lincoln, Lancaster county, Nebraska, subject, however, to the life estate in said real estate which is now owned and held by the defendant Charles H. Boettcher, and the court finds that the said Charles H. Boettcher is the life tenant of said real estate,

and the court further finds that on the 9th day of March, 1907, Ignatius O'Reilly, then an unmarried man, executed and delivered to the defendant Charles H. Boettcher, in the name of C. H. Boettcher, a quitclaim deed conveying to him the life estate in said lot 3, block 85, in the city of Lincoln, Lancaster county, Nebraska, and that said deed is recorded in book 139 of deeds, at page 176 thereof, and the court finds that the defendant Charles H. Boettcher, under and by virtue of said quitclaim deed from and after the 9th day of March, 1907, the date of said deed, came into possession of and became entitled to the right, title and interest in said property for and during the term of the natural life of said Ignatius O'Reilly." It is also found that said Ignatius O'Reilly failed to pay the regular current annual taxes from 1899 to 1906, inclusive, as also the part of the special assessment levied against said real estate, and which he permitted to become delinquent. There is an itemized statement of such taxes and assessments attached to the amended petition. It is found that the taxes not paid by said Ignatius O'Reilly amounted to $527.05. There are numerous small findings relating to unpaid taxes. We omit the details of these findings because they cover several pages. The court "further finds that at this time it *is,* and that ever since the 9th day of March, 1907, the date of the deed to said Charles H. Boettcher from Ignatius O'Reilly, it *has been,* the duty of said Charles H. Boettcher to fully discharge and cancel all taxes and special assessments levied and assessed against said property." There is also a finding that the defendant Boettcher made improvements on said property to the sum of $3,144.94; also that the expectancy of life of Ignatius O'Reilly at the date of the stipulation in the case is 11.79 years. There is no finding "with respect to the liability of the several parties for the improvements made on said described property by the defendant Charles H. Boettcher." It is found that the party-wall agreement is a valid and subsisting agreement, and binding upon the plaintiff.

It is decreed that the deed from Englehardt and Swingle to Ignatius O'Reilly, dated April 6, 1891, and recorded in book 62, at page 175, in deed records of Lancaster county, Nebraska, be reformed and corrected so as to create in the plaintiff, Lena King, the right of survivorship in said lot 3, in block 85, Lancaster county, Nebraska, upon the death of her brother John O'Reilly, in harmony with the provisions of the last will of Frances B. O'Reilly, deceased. It is also found that Lena King is the sole owner of the entire fee title and remainder estate in said described real estate, subject, however, to the life estate of Ignatius O'Reilly which has been conveyed to Charles H. Boettcher. It is decreed that the treasurer's deed to Charles H. Boettcher, dated November 16, 1907, recorded in book 140, at page 454 of the records of Lancaster county, Nebraska, be, and the same hereby is, canceled of record, decreed and declared to be null and void.

It is further decreed that the party-wall agreement set forth in the answer of the Lincoln Steam Paste Company is valid and binding upon all parties to the suit; that defendant Charles H. Boettcher is entitled to a tax lien against the remainder estate in said described property in the sum of $810.15, which is hereby declared to be a judgment in favor of the defendant. There is a judgment for that sum of money against the plaintiff.

It is decreed that plaintiff's title in the remainder estate, subject to the life estate now owned by Charles H. Boettcher, be forever quieted and established in her as against each and all of said defendants; that from November 2, 1905, the date when Boettcher purchased the tax certificate, until the 9th day of March, 1907, the day when he became a life tenant, he paid all the taxes assessed against the property, which payments, together with interest thereon from the time of the several payments until the date of the decree entered in this case on July 14, 1911, amounted to the sum of $810.15.

The district court decreed Lena King to be the sole owner of the entire fee title and remainder estate in the said described real estate, subject, however, to the life

estate of Ignatius O'Reilly, as above set forth; also that the treasurer's deed is null and void because of defects in the scavenger proceedings leading up to its acquirement. The deed is canceled by the decree.

It is further decreed that the defendant Charles H. Boettcher is entitled to a tax lien against the remainder estate in said property in the sum of $810.15, and it is ordered that Lena King's remainder estate in said property shall be sold to satisfy this lien, if the judgment is not paid within twenty days from the date of the decree. It is from this portion of the decree that Lena King appeals.

The errors assigned are: (1) That the court erred in finding that the defendant Charles H. Boettcher was entitled to a lien against the remainder estate in said property in the sum of $810.15; (2) that the judgment in favor of Charles H. Boettcher is contrary to law.

1. Upon the life tenant rests the duty to pay the taxes which are assessed against the property. "A life tenant st pay all the ordinary taxes on the property during the continuance of his estate." 16 Cyc. 632.

"Life tenant of lands is charged with the duty of paying the taxes which accrue upon the property of which he is enjoying the use, rents and profits." *First Congregational Church v. Terry*, 130 Ia. 513. 45 Cent. Dig. (Taxation) sec. 1358, and note; 33 Cent. Dig. (Life Estate) secs. 18, 39, 51; 12 Dec. Dig. (Life Estate) sec. 18.

"As between the life tenant and the owner of the fee, it is the duty of the former to pay all taxes charged against the land during the continuance of his estate." *Spiech v. Tierney*, 56 Neb. 514. In the last named case it is said in the body of the opinion: "As between the heirs and the tenant for life, it was undoubtedly the duty of the latter to pay all taxes assessed against the land during the continuance of his estate. *Disher v. Disher*, 45 Neb. 100; *Prettyman v. Walston*, 34 Ill. 175; *Thompson v. McCorkle*, 136 Ind. 484; 1 Washburn, Real Property, secs. 96, 97. This was a duty due from Kyron Tierney to the owners of the fee, and one which they might by an appropriate

action enforce at any time.   *   *   *   They were a lien on
the land itself, and were payable at the treasurer's office
without demand."

In *Disher v. Disher,* 45 Neb. 100, it is said in the syl-
labus: "As between a tenant for life and the reversioner,
the former is required to pay taxes assessed against the
estate."   In that case the remaindermen sought to en-
join the life tenant from cutting and removing valuable
timber.   She set up by way of defense, that she was cut-
ting and selling the timber to provide funds for the pay-
ment of current taxes.   This court held: "That as be-
tween herself and these plaintiffs it was her duty to pay
the taxes."

It is said in the supplemental brief of defendants: "It
is admitted that it is the duty of the life tenant to pay the
taxes."   This concession requires but little further inves-
tigation of the facts or consideration of legal principles.
In the same paragraph it is said: "If Mr. Boettcher ac-
quired the rights of Mr. O'Reilly, it was Mr. Boettcher's
duty *thereafter* to pay the taxes on this land.   Prior to
that time, no duty was upon him to pay any of the taxes."
Before the purchase from O'Reilly there could have been
no duty upon the part of Mr. Boettcher to pay the taxes;
whenever Boettcher *did make the purchase,* then he bought
*what O'Reilly had to sell, and nothing more.*   O'Reilly was
bound to keep up the taxes because he was the owner of
the life estate, and that duty was enjoined upon the owner
of such estate, whoever he might be, because it was a legal
burden which belonged to the life estate itself, and was in-
separable from it.   For that reason, Mr. O'Reilly could
not release the life estate by selling it to Boettcher, and
Boettcher bought it subject to the burden which O'Reilly
had permitted to accumulate.   If O'Reilly could convey
the life estate separate from the legal burden enjoined up-
on it, then he could transfer to Boettcher a greater inter-
est than he himself enjoyed.   Concert of action between
O'Reilly and Boettcher should not be permitted to destroy
the interest of the remainderman or to lessen its value.

2. It is said in the supplemental brief of defendants that the deed under which the O'Reillys held this land made it to "Ignatius J. O'Reilly for life, and thereafter to his children, Lena O'Reilly and John O'Reilly, in fee forever, share and share alike." It is then contended that the records of Lancaster county show under this deed that the life estate was in Ignatius J. O'Reilly; that the remainder went to his two children, John and Lena, share and share alike. Under such a deed it is said that, upon the death of the remainderman, unmarried and without issue, the father, under our laws, would inherit his share of the remainder. It is stated in the petition that John O'Reilly died about 1896, at about the age of 16, unmarried and without issue, and these facts are not denied. It is said by Boettcher: "Under the deed, and by reason of the death of John, the father, Ignatius, became the owner of an undivided one-half of the remainder, as well as the life estate." It should be remembered that the condition in the original will provided: "The use of such homestead or dwelling-house shall be vested for the term of his natural life in my son Ignatius O'Reilly, remainder to his children born, and to be born, of his present wife, or to the survivor or survivors of them living at the time of his death, share and share alike." It is further provided in the will that, upon request being made for a reinvestment, the executor shall sell the homestead, the proceeds to be invested "as my son shall request, and in such place as he shall request. * * * When such reinvestment is made, the said executor shall have the deed to the property made to my son Ignatius for life, remainder to his children, born or to be born of his present marriage, or to the survivor or survivors of them at his death, share and share alike." The deed, in order to conform to the will, should have contained the foregoing provisions. While Ignatius O'Reilly undertook to make a quitclaim deed for lot 3, he could not in any event convey more than the life estate which he owned. Counsel for the appellees fail to show us any authority for holding that the deed shall enable the

holder of the life estate to take more than the will provided, or to grant more than he owned.

The deed made by George Englehardt to Matilda Englehardt, husband and wife, and Calvin W. Swingle and Armila J. Swingle, husband and wife, conveys the lot in controversy to Ignatius O'Reilly "for life, and thereafter to his children, Lena O'Reilly and John O'Reilly in fee forever, share and share alike." When Boettcher made his purchase from Ignatius J. O'Reilly, he may have had no notice of the fact that O'Reilly only owned a life estate. The quitclaim deed made by Ignatius O'Reilly to Boettcher said nothing about the life estate. For anything that appears to the contrary, O'Reilly and Boettcher may have been attempting together to destroy the rights of remaindermen. Boettcher and O'Reilly were failing to keep up the taxes, and were taking such steps as might be taken to acquire title to the property in Boettcher, without regard to the rights of the plaintiff or the limitations of the will making the plaintiff the survivor.

The case of *Jones v. Merrill,* 69 Miss. 747, is not unlike the instant case. In that case it is stated in the syllabus: "(1) One who has acquired and holds the life estate of another in land cannot, in the lifetime of such other, acquire and set up against the remaindermen a tax title thereto, although the forfeiture for taxes occurred before he acquired such life estate. (2) Nor is he relieved of such disability by the fact that, before he acquired the life estate, he had entered and was in possession under a previous tax title; this being void and having been so adjudicated at the suit of the remaindermen."

3. The defendant Boettcher seems to have had notice that Ignatius O'Reilly only had a life estate in the premises. In the deed executed by George Englehardt and wife and Calvin W. Swingle and wife to Ignatius O'Reilly there is contained in the body of the same the following: "To Ignatius J. O'Reilly for life, and thereafter to his children, Lena O'Reilly and John O'Reilly, in fee forever, share and share alike." The foregoing language shows the terms and

conditions of the grant, and to whom the lot was conveyed.

All persons claiming an interest in or a lien upon real estate are bound to take notice of the recitation in a duly recorded deed in the chain of title of their grantor. *Mathews v. Jones,* 47 Neb. 616; *Carter v. Leonard,* 65 Neb. 670; *Albers v. Kozeluh,* 68 Neb. 522.

The petition of the plaintiff alleges that she is uncertain whether any part of the special assessments "should be borne by this plaintiff as remainderman," but that "she stands ready and willing to abide the judgment and order of the court in that regard." Where the facts are uncertain, as shown by the evidence, and may not in any event be definitely ascertained until after the trial is concluded, such willingness as is set forth in this petition would seem to be about all that should be required of the plaintiff in an equity case. By this averment the plaintiff may have tried to comply with the maxim that "one who seeks equity must do equity." *Payne v. Anderson,* 80 Neb. 216; *Humphrey v. Hays,* 85 Neb. 239.

4. It will be seen that the tax sale to the defendant Charles H. Boettcher was had upon a decree rendered in the Lancaster county district court under the provisions of what is known as the "Scavenger Act." The decree was entered September 15, 1905. The sale of the property involved was had November 2, 1905. The sale was confirmed November 16, 1907. On that day the treasurer's deed was executed and delivered to the defendant Charles H. Boettcher. On the same day it was filed for record. On March 19, 1907, Ignatius O'Reilly conveyed all his title and interest in the property by a quitclaim deed to defendant Charles H. Boettcher. As O'Reilly had a life estate, that is what he succeeded in conveying to Boettcher. The defendant Boettcher by his purchase of the scavenger tax certificate on November 2, 1905, did not become the owner of the fee title of the property. At that date the sale was not final, and therefore could not be complete. The sale of November 2, 1905, was only one of several essential steps necessary to be taken under the "Scavenger

Act" in order to obtain a tax title to the property. The sale cannot be complete until confirmation is had in the regular prescribed manner. *Parsons v. Prudential Real Estate Co.*, 86 Neb. 271.

The regularity of the proceedings upon which the treasurer's deed was executed is not admitted by the plaintiff. It is contended that said deed is void: (1) Because the affidavit for service by publication of the "Final Notice" did not set forth the name of the plaintiff, who was the owner of the property, which fact could have been ascertained from an examination of the title as shown by the record. (2) Because the published notice of the time limited in which redemption could be made was not directed to the plaintiff. (3) Because the holder of the tax certificate did not make the proper entries on the confirmation record until after the expiration of the time of redemption. Section 11181, Ann. St. 1911, provides: "It shall be the duty of the holder of each certificate of tax sale other than the state, county, or city, on or before the last day of the redemption period, either by himself or by his agent or attorney, to enter in said confirmation record the date of such decree, as well as the number of the tract covered by his certificate of tax sale, together with a description of the real estate on which confirmation is sought, and the time when and the place where a hearing will be had upon such confirmation. The entry of notice in such confirmation record shall be deemed equivalent to personal service upon all persons served with final notice." (4) Boettcher failed to comply with the requirements of said sections 11176, 11177, 11178, 11181, and thereby lost any rights that he may have had.

It was Boettcher's duty as the owner of the interest of the life tenant to pay the taxes assessed against the property. This purchase of the tax certificate was the equivalent of a payment of the taxes and special assessment.

Section 11176, Ann. St. 1911, provides that the "'Final Notice' to be served upon the owner" shall be so served not more than "six months from the expiration of the period of redemption," fixing the day of expiration of the

time of redemption, and directing the person served to examine the confirmation record for notice of the time when and place where the confirmation of sale will be had. It is provided in section 11177: "Where the owner of any real estate is a nonresident of the state or cannot, with reasonable diligence, be found therein, or in cases where the name or names of such owner or owners cannot be ascertained by the exercise of reasonable diligence, it shall be sufficient * * * to cause a notice * * * to be published once a week for three consecutive weeks in some newspaper of general circulation in the county where the land is located." It is further provided by section 11177 that prior to the giving of such notice it shall be the duty of the purchaser, his agent or attorney, to make and file in the office of the clerk of the district court an affidavit setting forth the names of the parties to be served by publication, and that they are nonresidents of the state, or cannot be found within the state upon the exercise of reasonable diligence, or that the names of the owners are unknown. Neither the affidavit for service by publication nor "Final Notice" as published (Abs., pp. 25-26) contain the name of the plaintiff. They did not therefore comply with the requirements of the sections above quoted.

Notice of the time when the redemption of land from tax sale will expire must be given by the tax purchaser or his assignee before the expiration of the time to redeem. *Ambler v. Patterson,* 80 Neb. 570; 45 Cent. Dig. (Taxation) secs. 1418, 1425, and cases cited.

"A tax deed, issued in April, 1904, without an affidavit showing the service of a notice to redeem, as required by section 124, art. I, ch. 77, Comp. St. 1901, having been first filed with the county treasurer, is void." *Peck v. Garfield County,* 88 Neb. 635.

"There being no legal service of the notice of expiration of time for redemption from the sale, the county acquired no title through its certificate, but merely retained a lien on the land by virtue of such certificate." *McKenzie v. Boynton,* 19 N. Dak. 531. *Archer v. Tubbs Sheep Co.,* 25 S. Dak. 399.

A notice of the expiration of the time of redemption from a tax sale is necessary to cut off the owner's title. *Neilan v. Unity Investment Co.*, 147 Ia. 677; *Johnson v. Fraser*, 112 Minn. 126.

Notice as published was directed to C. as "receiver of the *McKinley-Lanning Loan & Trust Company.*" C. was the receiver of the McKinley-Lanning Loan & Trust Company. "Held, That the notice as published was deficient and did not confer jurisdiction." *Lanning v. Musser*, 88 Neb. 418. *Lanning v. Haases*, 89 Neb. 19.

"The notice of the expiration of redemption from a tax sale must be given in strict compliance with the statute." *De Laurier v. Stilson*, 141 N. W. 293 (121 Minn. 339).

"Scavenger tax law must be strictly construed against one claiming title by a tax purchase thereunder." *Archer v. Tubbs Sheep Co.*, 25 S. Dak. 399.

Section 10681, Ann. St. 1903, construed in *State v. Several Parcels of Land*, 75 Neb. 538, held to afford the landowner an opportunity to have the question of the validity of the tax determined before he is deprived of his property; held, also, that the decree does not operate to deprive her of her day in court before being divested of her title.

In *Prudential Real Estate Co. v. Hall*, 79 Neb. 805, it is held: "The validity of taxes involved in a default decree rendered in a scavenger suit may be contested upon an application to confirm the sale." The "Scavenger Act" should be followed in every detail to the end, and it should not be abandoned for or blended with the proceedings provided by the general revenue law.

There must be a strict compliance with the Scavenger Act or the holder of the certificate acquires no title under the tax deed. It was said in *Ambler v. Patterson*, 80 Neb. 570, on rehearing, 575: "A thorough examination of what is known as the 'Scavenger Act' (Comp. St. 1903, ch. 77, art. IX) convinces us that it was the intention of the legislature to allow the owner of land, against which a decree of sale for delinquent taxes has been entered, every

opportunity to save his land, either by paying the amount of the decree prior to a sale, or by redeeming from the sale afterwards made. That the act should receive a liberal construction in favor of the owner to comply with this evident purpose of the legislature should not be denied; and it is our duty to afford the owner the opportunity to redeem his land where full and actual compliance with the statute has not been observed." In that case it was held that a notice running to several persons describing different tracts of land in which each had a separate interest or ownership was not sufficient. Because of the error in the "Final Notice" the judgment of the court below was reversed.

In *Peck v. Garfield County,* 88 Neb. 635, it was held that a tax deed issued in April, 1904, without an affidavit showing the service of a notice to redeem as required by section 124, art. I, ch. 77, Comp. St. 1901, having been first filed with the county treasurer, is void. In the body of the opinion it is said: "For the failure of Mr. Ratcliff, the holder of the tax sale cetrificate, to perform the plain statutory condition precedent to his obtaining a tax deed, the deed issued upon such certificate was absolutely void. It follows that the court erred in refusing to permit plaintiff to redeem." The judgment of the district court was reversed, with directions to enter a decree canceling the tax deed, and to permit the plaintiff to redeem from the tax sale, and quiet plaintiff's title to the property.

The findings and judgment of the district court establishing a tax lien in favor of defendant Charles H. Boettcher against the remainder estate of plaintiff in the sum of $810.15, and ordering the property sold for the payment thereof, in the event that plaintiff shall fail to pay the same within twenty days from the entry of judgment, is reversed, and the claim of said defendant Boettcher, and every item thereof on which such judgment is based, is and are dismissed, with prejudice, and the remainder estate of plaintiff in fee simple is quieted and confirmed in her; subject to the life estate of said Ignatius J. O'Reilly, now

owned by said defendant Boettcher. In all other respects the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

LETTON and SEDGWICK, JJ., not sitting.