THE SECURITY INVESTMENT COMPANY, TRUSTEE, APPELLEE, v. GEORGE GOLZ ET AL., APPELLANTS, IMPLEADED WITH WILLIAM H. GOLZ ET AL., APPELLEES.

36 N. W. 2d 862

Filed April 14, 1949. No. 32534.

Lloyd E. Chapman, for appellants.

Louis B. Finkelstein and Clinton J. Campbell, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an appeal from a decree of foreclosure of two tax lien certificates. The defendant George Golz was the owner of a life estate in 260 acres of land adjoining the village of Sprague, Nebraska, described as Lot 1, northwest, Lot 3 and west half of northeast quarter and northeast quarter of northeast quarter, Section 33, Township 8, Range 6, except right-of-way of the Missouri Pacific Railway Company. George Golz conveyed his life estate to Cammie Golz and Ida Lesoing in 1937.

George Golz, Cammie Golz, wife of George Golz, Ida Lesoing, sister of George Golz, and Joseph Lesoing, husband of Ida Lesoing, are appellants. William H. Golz, the remainderman, and Emma Golz, his wife, are appellees and cross-appellants. The Security Investment Company, Trustee, is the plaintiff and appellee. The

Security Investment Company is also a defendant and an appellee.

The undisputed facts shown by the record follow. Prior to 1933, George Golz, the owner of the life estate in the real estate hereinbefore described, was indebted to The Security Investment Company. On November 5, 1934, the county treasurer of Lancaster County sold and delivered two tax sale certificates for the delinquent taxes of 1933 to one Glen Foe in the amounts of $54.80 and $116.55. On May 21, 1935, the purchaser of the tax sale certificates paid the first half of the 1934 taxes thereon in the amount of $24.91. On August 26, 1936, Glen Foe assigned and transferred the two tax sale certificates and taxes paid thereon to The Security Investment Company, Trustee, for the amount of $289.30, as evidenced by a check dated August 26, 1936, given by such company. The Security Investment Company, Trustee, on September 4, 1936, paid the last half of the 1934 taxes and all of the 1935 taxes on the tax sale certificates in the amounts of $85.40 and $173.65.

On October 8, 1936, George Golz and his wife executed and delivered to The Security Investment Company a mortgage agreement conveying his life estate for indebtedness he owed the mortgagee in consideration of the sum of $8,961.05, to draw interest at five percent per annum, payable annually, which was filed of record October 9, 1936. The mortgage provided, in addition to the conveyance, the following: "It is further contracted and agreed by and between George Golz and Cammie Golz, that from the date of this instrument until such time as the above described note in the amount of $8961.05 is paid in full, together with interest, that the said Security Investment Company—shall have charge of renting, collect all rentals, control, and manage the premises herein described upon which the said George Golz has a life estate without charge, and that all of the rentals accruing from said premises shall be applied as follows: First, for the payment of taxes accruing thereon

levied by the State of Nebraska, Lancaster County, and also insurance on the buildings in the amount of $____ or insurable value. Second, for the payment of interest on the above described note and the balance remaining to be applied on the principal of said note hereinbefore described. It is further agreed and contracted between the parties that unless mutually agreed to between the parties in writing, that this method of payment of the above described note shall be exclusive and binding upon each of the parties."

On May 14, 1937, The Security Investment Company, Trustee, paid the first half of the 1936 taxes on the tax sale certificates in the amounts of $28.81 and $59.95. All subsequent taxes on the above-described real estate were paid by The Security Investment Company from the income and receipts from the real estate as provided for in the mortgage agreement.

On August 19, 1937, The Security Investment Company, Trustee, filed its petition in the district court for Lancaster County to foreclose the tax sale certificates and the taxes paid thereunder.

On July 25, 1946, the amount of indebtedness for which the mortgage on the life estate was given was paid in full and a balance paid to the owner of the life estate, George Golz.

The articles of incorporation of The Security Investment Company were filed in the office of the county clerk of Lancaster County, December 29, 1932. The Security Investment Company, Trustee, and The Security Investment Company were one and the same entity during all of the foregoing transactions. The secretary of The Security Investment Company testified that tax sale certificates were purchased in the name of The Security Investment Company, Trustee, so that the same might be sold to a client if call should be had for the same.

The Security Investment Company, during the period from October 8, 1936, to July 25, 1946, when the amount

of the indebtedness evidenced by the mortgage was paid by the owner of the life estate, was also the owner of the tax sale certificates and the tax payment receipts on such certificates as hereinbefore set out.

The Security Investment Company had its offices with the Martell State Bank to which the life tenant was indebted, and each had the same officers during the time the transactions were had in this case.

On June 15, 1948, the trial court entered a decree finding generally in favor of the defendant The Security Investment Company upon its cross-petition, and against the defendants George Golz and Cammie Golz, Ida Lesoing and Joseph Lesoing, William H. Golz and Emma Golz; further decreed that "in case the defendants George Golz and Cammie Golz, Ida Lesoing and Joseph Lesoing, William H. Golz or Emma Golz or either of them shall fail for twenty days from the entering of this decree, to pay to The Security Investment Company the sum of $1264.68 with interest thereon at the rate of nine percent per annum from this date and $126.47 as Attorney's Fees for the attorney of The Security Investment Company and the costs paid out by The Security Investment Company in this action; that the equity of redemption of the defendants George Golz and Cammie Golz, Ida Lesoing and Joseph lesoing, William H. Golz and Emma Golz be foreclosed and said premises shall be sold as upon execution for the satisfaction of the aforesaid sums; that an order of sale for such purpose issue * * *." The decree further provided for the manner of the distribution of the funds.

The plaintiff, The Security Investment Company, Trustee, and defendants George Golz and Cammie Golz, Ida Lesoing and Joseph Lesoing, filed motions for new trial. Upon the overruling of the same, the defendants George Golz and Cammie Golz, Ida Lesoing and Joseph Lesoing, appealed.

The appellants assign as error that the decree of the district court is contrary to law for the reason that appel-

lee, The Security Investment Company, violated its trust when as a mortgagee in possession of the mortgaged premises it was obligated to pay all taxes thereon, it held tax sale certificates to the mortgaged premises, paid taxes on such tax sale certificates, and consequently cannot be permitted to strengthen its title in an action not involving its mortgage.

In the brief of the appellee and cross-appellant, The Security Investment Company, Trustee, the statement is made that the appellees William H. Golz and Emma Golz have not appealed from the judgment of the district court and that the same is final as against them.

Section 25-1913, R. S. 1943, provides that a cause shall be docketed in the Supreme Court under the same title it had in the district court, that the party or parties asking the reversal, vacation, or modification of such judgment, decree, or final order shall be designated as appellant or appellants, and that the adverse party or parties shall be designated as appellee or appellees.

The appellees William H. Golz and Emma Golz filed their brief in this court as appellees and cross-appellants. Section 1 d, Revised Rules of the Supreme Court of Nebraska, provides: "The filing of an appeal shall vest in an appellee the right to a cross-appeal. The cross-appeal need only be asserted in appellee's brief in the manner provided by Rule 8b 4." which provides: "Where the brief of appellee presents a cross-appeal, it shall be set forth in a separate division of the brief. This division shall be headed 'Brief on Cross-Appeal' and shall be prepared in the same manner and under the same rules as the brief of appellant."

The appellees William H. Golz and Emma Golz complied with the foregoing stated rule. The following authorities are pertinent.

"It is the practice of courts of equity when they have obtained jurisdiction of a case to administer all of the relief which the nature of the case and the facts demand, and to bring such relief down to the close of litigation

between the parties." Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150.

"It is a well-settled principle of equity jurisprudence that where a court of equity has obtained jurisdiction of a cause for any purpose it will retain it for all, and will proceed to a final determination of the case, adjudicate all matters in issue, and thus avoid unnecessary litigation." Buchanan v. Griggs, 20 Neb. 165, 29 N. W. 297. See, also, Glissmann v Bauermeister, 139 Neb. 354, 297 N. W. 617, 299 N. W. 225.

All the parties to this litigation are before this court as appellants, appellees, or appellees and cross-appellants. The entire record involving all the issues presented in the district court is here for determination on trial de novo, as provided for in section 25-1925, R. S. 1943.

The law is well established in this jurisdiction "As between the life tenant and the owner of the fee, it is the duty of the former to pay all taxes charged against the land during the continuance of his estate." Spiech v. Tierney, 56 Neb. 514, 76 N. W. 1090. See, also, Disher v. Disher, 45 Neb. 100, 63 N. W. 368; King v. Boettcher, 96 Neb. 319, 147 N. W. 836; Criswell v. McKnight, 120 Neb. 317, 232 N. W. 586, 84 A. L. R. 1361.

In view of the foregoing authorities, when The Security Investment Company obtained a mortgage on the life tenant's estate and entered into possession of the land under the mortgage, it became the legal duty of such mortgagee to pay the taxes on the land as the law required the life tenant to pay, unless an exception was made thereto by the parties at interest. However, the appellee, The Security Investment Company, contends that in accordance with the provisions of the mortgage agreement it was obligated to pay the taxes accruing thereon levied by the State of Nebraska, Lancaster County; and that the language "taxes accruing thereon" is subject to one interpretation, and refers to taxes which are levied and accrue in the future, and does not refer to taxes levied and due prior to the obtainance of its mort-

gage. The case of Hartsfield Co. v. Shoaf, 184 Ga. 378, 191 S. E. 693, is cited to the following effect: After an analysis and interpretation of the verb "accrue" the court concluded that "accrue," "accrued," and "accruing," in their generally accepted sense are used to denote something which is to be added to or attached to something else, citing 1 C. J. S., 759.

Webster defines the word "accrue" as "2. To come by way of increase * * *; to arise or spring as a growth or result; * * *." Black's Law Dictionary defines the word "accruing" as meaning in the process of maturing; that which may or will ripen into a vested right, an available demand, or an existing cause of action. Black's Law Dictionary (3d ed.), p. 30. See, also, Johnson v. Humboldt Ins. Co., 91 Ill. 92, 33 Am. R. 47. The meaning of the word is dependent somewhat on the facts of each case and the objects to be accomplished either by the statute or contract in which the word is used. See, Hartsfield v. Shoaf, *supra;* Johnson v. Humboldt Ins. Co., *supra;* Dempster v. Atwood, 118 Neb. 579, 225 N. W. 683, 227 N. W. 451.

In contracts wherein one party agrees to pay taxes, the meaning of the term "taxes" must be determined by the particular facts involved. See National Bank of Kentucky v. Minary, 221 Ky. 798, 299 S. W. 985.

Therefore, The Security Investment Company, appellee, argues, having purchased the tax sale certificates six weeks or more prior to procuring the mortgage on the life estate, it was only required to pay taxes on the land from the date of the mortgage as indicated by the mortgage agreement, and could not use any of the income from the real estate in its possession under the mortgage to pay any funds or claims except as set forth therein.

In furtherance of its contention The Security Investment Company directs attention to section 77-1822, R. S. 1943, which provides in part that certificate of purchase shall be assignable by endorsement, and an assignment

thereof shall vest in the assignee all the right and title of the original purchaser.

A tax certificate may be assigned by endorsement, and an assignee of a tax certificate acquires all the rights thereunder of the assignor. See Green v. Hellman, 61 Neb. 875, 86 N. W. 912.

Consequently, as assignee The Security Investment Company acquired all the right, title, and interest of Glen Foe, the original purchaser of the tax sale certificates, which included the right to foreclose the same without obligation to the owner of the life estate or remainderman.

It appears from the record that The Security Investment Company instituted this action to foreclose the tax sale certificates and the taxes paid thereon on August 19, 1937. It also appears from the record that on May 14, 1937, after the mortgage was in effect, The Security Investment Company, as the owner and holder of the tax sale certificates, made a payment of taxes on the same for the half year of 1936, which payment of taxes is included in the foreclosure proceedings. Approximately ten years later, when the mortgage indebtedness had been fully paid and a balance over and above the indebtedness was paid to the life tenant who agreed to pay the amounts due on the tax sale certificates from a corn crop he was raising but failed to do so, The Security Investment Company then pressed this suit.

It being the duty of the holder of the life estate to pay the taxes, he cannot as against the remainderman acquire a title derived from a sale of the lands for the payment of taxes. See Annotation in 17 A. L. R. 1399.

"Where a mortgagor owes a duty to the mortgagee to pay taxes upon the mortgaged property, neither he nor his assigns can acquire any right against such mortgage by purchasing the property at a judicial or administrative sale * * *." Pitman v. Boner, 81 Neb. 736, 116 N. W. 778.

The converse of the situation is also true. "A mort-

gagee in possession seeking to enforce his mortgage upon real estate by a decree of foreclosure and sale, occupies a trust relation in regard to the property, and cannot as against the mortgagor, while treating the mortgage as valid, hold adversely as to him." McKeighan v. Hopkins, 19 Neb. 33, 26 N. W. 614.

The life tenant must pay taxes that accrued within the time of the life estate though before he purchased. See, King v. Boettcher, *supra;* Watkins v. Green, 101 Mich. 493, 60 N. W. 44; Criswell v. McKnight, *supra.*

We deem a summary of the pertinent facts in the case of King v. Boettcher, *supra,* appropriate to this appeal, and review a part of such facts. Before the purchase from O'Reilly (the life estate) there could have been no duty upon the part of Boettcher to pay the taxes; whenever Boettcher did make the purchase, then he bought what O'Reilly had to sell, and nothing more. O'Reilly was bound to keep up the taxes because he was the owner of the life estate, and that duty was enjoined upon the owner of such estate, whoever he might be, because it was a legal burden which belonged to the life estate itself, and was inseparable from it. For that reason, O'Reilly could not release the life estate by selling it to Boettcher, and Boettcher bought it subject to the burden which O'Reilly had permitted to accumulate. If O'Reilly could convey the life estate separate from the legal burden enjoined upon it, then he could transfer to Boettcher a greater interest than he himself enjoyed. Concert of action between O'Reilly and Boettcher should not be permitted to destroy the interest of the remainderman or to lessen its value.

"It is a general principle of law that one who is under an obligation to pay the taxes on land, such as * * * a mortgagee, cannot strengthen his title thereto by buying in the tax title when the property is sold as a consequence of his omission to make such payment. In such a case the sale will merely operate as a payment of the taxes and the title will be the same as it was before the

sale, except that the lien for taxes is discharged. It appears that this exclusion extends likewise to persons standing in a relation of trust to the owner." Annotation to 123 A. L. R. 398. See, also, 26 R. C. L., Taxation, §§ 370, 372, pp. 412, 415.

"A purchaser, at a sale under a judgment, of the estate for life, takes it cum onere, and must devote the rents to the payment of taxes due from said estate before the purchase, as well as those imposed subsequent thereto." Murch v. Smith Mfg. Co., 47 N. J. Eq. 193, 20 A. 213. It was said in the opinion: "The life estate of John H. Murch, when purchased by defendant, was liable to the extent of its rental value for the taxes in arrear; the income has been sufficient to keep down the taxes and pay those in arrear; the defendant, as purchaser, took the estate cum onere, and must apply a sufficient amount of the rents to the discharge of said tax liens." See, also, Holmes v. Danforth, 83 Me. 139, 21 A. 845.

In Rich v. Allen, 226 Iowa 1304, 286 N. W. 434, the court held that a judgment creditor of a life tenant who levied execution on a life estate, and purchased the life estate on execution sale, assumed all the duties of the life tenant and was obligated to pay delinquent taxes or else lose the advantage of the life estate. The case cited Murch v. Smith Mfg. Co., *supra;* King v. Boettcher, *supra.*

In Mathews v. O'Donnell, 289 Mo. 235, 233 S. W. 451, the court said: "The purchase of land at its sale for taxes, by the life tenant or by the life tenant's grantee, inures to the benefit of the remaindermen, and operates only as a payment of the taxes. Such purchaser occupies a fiduciary relation to the remaindermen, and is bound to exercise every reasonable precaution to preserve the property intact for transmission to them upon the termination of the life estate." The court further held: "* * * the record of title showing he had only a life estate is constructive notice to his grantee, and the

tax deed informs such grantee that the life tenant had suffered the land to be sold for delinquent taxes which the law required him to pay."

In the instant case The Security Investment Company had actual notice, and devised a deliberate plan to deprive the remainderman of his estate by suit for the sale for taxes.

Even though the purchaser of the life tenant is one who has previously purchased tax titles held upon sales for taxes which it was the life tenant's duty to pay, it becomes his duty to make the payment, and his acceptance of the deed from the life tenant operates as a redemption from or extinguishment of his tax lien.  See, Little v. Edwards, 84 Wis. 649, 55 N. W. 43; Annotation in 17 A. L. R. 1397.  See, also, Brodie v. Parsons, 23 Ky. L. 831, 64 S. W. 426; Jones v. Merrill, 69 Miss. 747, 11 So. 23; 1 Restatement of the Law, Property, § 149, p. 488; 51 Am. Jur., Taxation, § 1054, p. 919, cases cited under note 10 thereof too numerous to cite; 33 Am. Jur., Life Estates, Remainders, Etc., § 443, p. 972; 36 Am. Jur., Mortgages, § 247, p. 814.

Section 77-1403, R. S. 1943, provides in part:  "The mortgagee or his assigns may pay the tax levied on the interest of the owner and have a lien thereon secured by the mortgage to the extent of the amount so paid with lawful interest thereon."

The Security Investment Company apparently did not elect to follow the foregoing section of the statute.

In Burchard v. Roberts, 70 Wis. 111, 35 N. W. 286, 5 Am. S. R. 148, in referring to sections of the statute in Wisconsin, 1878 Revised Statutes, §§ 1158, 1160 inclusive, which is analogous to the provisions of section 77-1403, R. S. 1943, the court said in the opinion that in the present case the purchase of the land at the tax sale for the mortgagees, and the taking of the tax certificates thereon, must be regarded as for the protection of the estate and the mutual benefit of the mortgagees and mortgagor.  Then, in speaking of the statu-

tory provisions as above cited, the court said: "These statutory provisions give the mortgagee an adequate remedy to reimburse himself for the taxes thus paid by him, and are inconsistent with the idea that he may cut off the mortgagor's equity of redemption in the mortgaged premises by acquiring an adverse title thereto under tax proceedings."

As heretofore stated, the use of the language in the mortgage agreement which includes the word "accruing" and, as stated in Hartsfield v. Shoaf, *supra,* the meaning of the word is dependent somewhat on the facts of each case and the objects to be accomplished either by the statute or contract in which the word is used, and, where a party in purchasing agrees to pay taxes, the meaning of the term "taxes" must be determined by the particular facts or agreement involved. In considering the record in the instant case and in the light of the authorities cited, we conclude that equity and good conscience will not permit The Security Investment Company to a decree of foreclosure of tax sale certificates, and require the life tenant or his successor in title to pay the amounts due thereon to redeem, or require the remainderman to pay the amounts due thereon to redeem.

The possessory contract or mortgage agreement should be given a reasonable construction. The reasonable intendment was that all taxes should be paid from the income. It is a highly technical construction that the life tenant intended existing taxes to remain unpaid. The only fair construction, consistent with honesty, is that he meant that any taxes first should be paid. Otherwise there was concerted effort between the holder of the life estate and The Security Investment Company to waste the remainder estate. Obviously the plan and scheme of The Security Investment Company was to divert the income from the life estate to the payment of indebtedness of the life tenant and to use the pending but dormant foreclosure suit to collect the taxes,

with penalty interest, from the remainderman, if necessary. This was a clear breach of duty to the remainderman. As pointed out in the cases above cited, in law and equity, its tax payments were redemption payments. While the factual situations in the cited cases may be dissimilar to those of the instant case, the principles of law announced therein are pertinent to a determination of this appeal, as heretofore pointed out.

In view of our holding, it is unnecessary to determine the cross-appeal of the appellee and cross-appellants, The Security Investment Company, Trustee.

For the reasons given herein, the judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.