## BARNWELL v. MARION.

1. EQUITY—FORECLOSURE—MORTGAGES.—If a mortgagee wilfully denies a substantive right granted to a mortgagor by covenants in mortgage, with intent to oppress, or recklessly in a spirit wholly regardless of the rights of the mortgagor, equity will interfere; but here the conduct of the mortgagor in refusing sales, held to be neither oppressive nor unreasonable, but that he exercised a discretion given him by the mortgage in the spirit of a careful creditor seeking safety.

2. PRACTICE—EXHIBITS—MASTER.—Return of exhibits by master for safe keeping to party offering them, and filing copies in record, and originals with the clerk of the court by party holding them, upon receiving notice of exception to such act, leaves no ground for complaint by appellant.

3. MORTGAGES—TAXES.—Where mortgage provides that mortgagee may pay taxes when mortgagor fails to do so, and charge same as mortgage debt, taxes so paid after foreclosure commenced are properly added to mortgage debt.

4. FORECLOSURE—MASTER.—No error to commit to master the selling of lots in such parcels as he may think will secure best prices.

Before GAGE J., Charleston, February, 1900.    Affirmed.

Foreclosure by Joseph W. Barnwell, trustee, and individually and as agent and guardian, and Ann Joseph Wilson and Ellen F. Hayne against Sophia Frances Shepherd Marion.   From decree ordering foreclosure, defendant appeals.

*Messrs. Bryan & Bryan,* for appellant, cite: *As to filing papers with clerk:* 50 S. C., 380.   *Tender discharges mortgage:* 26 S. C., 337.   *He who seeks equity must do equity:* 1 How., 56; McM. Eq., 157; 20 Wall., 14; 109 U. S., 522; 18 Wall., 375; 1 How., 166; 5 How., 192.   *Party failing to do equity should have doubts and difficulties solved against him:* 9 Wall., 788.   *Right to redeem is a favorite of equity:* 106 U. S., 47; 14 Wall., 297; 97 U. S., 68; 12 Wall., 323; 135 U. S., 457; 128 U. S., 691; McM. Eq., 126; 131 U. S., 258.   *Tender releases debtor from subsequent accruing interest and extinguishes mortgage lien:* 15 Ency., 873; 26 S. C., 345.   *As to payment:* 18 Ency., 186.

*Messrs. Langdon Cheves,* contra, and *Joseph W. Barnwell,* of counsel, cite: *As to custody of documents:* Code,, 170, 174; Rev. Stat., 334.   *Evidence as to payment of taxes properly received:* Gen Stat., 220.   *Testimony outside of mortgage as to understanding of conditions of mortgage inadmissible:* 53 S. C., 547; 16 S. C., 357; 44 S. C., 538.

April 18, 1901.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   This is the fourth appeal in this case—54 S. C., 223; 56 S. C., 54; 58 S. C., 459.   The action was commenced in January, 1898, for the foreclosure of a mortgage on lands in the city of Charleston, on King, Rutledge and Shepherd streets, executed to secure bonds aggregating $40,000, payable May 22, 1897, with annual interest at seven per cent., from May 22, 1894, when executed.   The case was heard upon the testimony as reported by the master,

and the Circuit Court decreed for the foreclosure on February 7, 1900, for sums due under the mortgage aggregating about $52,322.47, with interest calculated up to 12th January, 1900. This amount, besides principal and interest due, included $1,499.23 paid for taxes upon the mortgaged property by the mortgagee, under a provision in the mortgage; also, $2,418.96 as attorney's fee, as provided in the mortgage, being five per cent. of the amount involved; also, $26.24 to Joseph W. Barnwell as trustee, for commissions on the amount advanced and paid out for taxes.

The main contention in the case was under the following defense set up in the answer: "14. Further answering, this defendant, Sophia Frances Shepherd Marion, alleges that at the time of the giving of said bonds and mortgage, which were given to said trustee in substitution of bonds and mortgage previously given to said trustee in settlement of a half interest in said mortgaged premises, it was distinctly understood and agreed by and between the said Joseph W. Barnwell, trustee, and this defendant, and the said settlement was made and said bonds and mortgage were given upon the express condition and understanding that the defendant should have all reasonable opportunity to sell, from time to time, lots of land described and shown on said plat at reasonable market prices, and by such gradual sales be enabled to pay the bonds and entire mortgaged debts, the defendant receiving one-third of all such sales and the plaintiffs two-thirds thereof. That the sole purpose of such bonds and mortgage and covenants and conditions thereof was to carry out such plan of settlement, and thereby to pay gradually the bonds which represented the one-half interest of plaintiff, Joseph W. Barnwell, as trustee, in such lands. 15. Further answering, this defendant shows that after said bonds and mortgage was given in 1897, and thereafter, and at other times from time to time, said defendant, Sophia Frances Shepherd Marion, widow, being desirous of selling parts of the mortgaged premises, consisting of unimproved city lots, under the terms and conditions of said mortgage, said trus-

tee, Joseph W. Barnwell, having approved prices at which sale of the said unimproved city lots might be made, thereafter unreasonably refused and declined to allow sales to be made at such prices, and also prevented and hindered sales of such parts of said premises at reasonable market prices; and thereby prevented and hindered said defendant from reasonably exercising her right and privilege of reasonable sales under said mortgage, and from selling such portions of said premises as she desired; and thereby prevented and hindered said defendant from realizing funds to pay the interest and the principal of said bonds, and to pay the taxes accruing upon said mortgaged property; and unreasonably deprived this defendant of the benefit of the said conditions of said mortgage by the sales at reasonable prices by said defendant of said unimproved city lots, the said mortgaged premises hereupon, which express condition and expectation and for which purpose alone said mortgage was given; and thereby said trustee has frustrated the purpose for which said mortgage was given, and greatly damaged said defendant. And this defendant, by reason of such *breach of covenant,* purpose and condition of such mortgage, is not liable for any commissions of trustee under said deed of trust or mortgage, and is not liable for any costs and expenses, and attorney's fees incurred thereunder; all of which said costs and expenses, and attorney's fees, were incurred only after and in consequence of a breach of said covenant, and a frustration by the said trustee of the purpose of said mortgage, and of the desire, wish and intention, and the right and privilege of this defendant under the terms of said mortgage, to sell at reasonable prices the lots constituting said premises from time to time, to pay said mortgage debt, interest and taxes." This contention of the defendant is based upon the following provisions in the mortgage: "And it is further expressly provided, understood and agreed, that in case the said Sophia Frances Shepherd Marion may desire to sell from time to time any part or parts of the mortgaged premises, and if said trustee or any successor in the trust shall approve of said sale

and of the terms of sale, then upon payment to said trustee, or in case of assignment of said bonds, to the assignee or assignees thereof, of two-thirds of the cash part of the proceeds of sale and the entire credit securities of such sale, said payment to.be evidenced to said trustee by the receipt of the assignee or assignees of said bond, if the same have been assigned, it shall be the duty of said trustee or his successors to release the property so sold from the lien of said mortgage until the entire mortgage debt shall be paid."

The Circuit Court disposed of this matter in the following language: "It is not alleged that the trustee fixed prices and intentionally, with evil mind, prevented the sale thereof; no wrong intent is charged against the trustee. The allegation is briefly that.the trustee first fixed prices for the sale of lots, and that he, secondly, unreasonably, prevented the sale thereof. The covenant was that the mortgagor might sell, with the mortgagee's approval of sale, terms and prices, which was a substantial right of the mortgagor; and if the mortgagee denied it wilfully, with intent to oppress, a court of equity would not permit the wrong; and if the mortgagee denied it recklessly, in a. spirit which was wholly regardless of the rights of the mortgagor, a court of equity would still interfere; but, in my judgment, the testimony in this case fails to show such a state of facts. The mortgagee never saw the mortgagor, nor had any conversation with her whatsoever since the mortgage was signed, nor for some years before or since the mortgage was due. The transactions about prices, sales, terms and approval have been had exclusively betwixt mortgagee and the agent of the mortgagor. The prices alleged to have been fixed by the mortgagor appear in a letter dated January 7th, 1896, written by Mr. J. W. Barnwell to Mr. Julian Fishburne, agent of Mrs. Marion; but the mortgagee therein expressly reserved the right to cancel or to change these prices, and he did so on the 27th April, 1897, by letter to the mortgagor herself. The transactions between the parties about the prices, sales, terms and approval are all evidenced by correspondence in evidence

herein. It would be useless to set out these letters in this decree; they do not satisfy me that the mortgagee acted unreasonably or oppressively. The debt was a large one, and it was owned by six different parties. The margin betwixt it and the security was close and uncertain. The taxes for 1897 have not been paid and part of the interest due in that year was in arrears; the mortgagee was trustee for most of the debt holders. Up to 12th March, 1897, two months before the debt was due, there was no friction between the parties; but little of the debt, if any, had been then paid by sales. All the correspondence, except the letter of January 7th, 1896, was had in 1897, close on to the maturity of the debt. It was too late then to sell. I have given very careful consideration of the facts and my conclusions have been reached without misgivings, and my opinion is that the plaintiff is entitled to a foreclosure of the mortgage and sale of premises to satisfy the debt."

We have very carefully considered the testimony, also, and concur in the conclusion of the Circuit Court, that the conduct of the trustee was neither oppressive nor unreasonable. Doubtless, the defendant and those representing her thought the trustee was unreasonable, from their standpoint of view, viz: that the trustee was in duty bound to approve sales of portions of the mortgaged property and release the mortgage thereon, upon receiving two-thirds of the price of said sales, if made at a reasonable market value thereof. But under the terms of the mortgage, no duty to release the mortgage upon portions of the premises arose until the trustee (1) approved of the sale and the terms thereof, and (2) received two-thirds of the cash part of the proceeds of sale and the entire credit securities of such sale. This left a wide discretion in the trustee in the matter of approving sales and releasing, and that discretion was not to be controlled, as contended by appellant, by whether such sales were made or contemplated on the basis of "reasonable market value." If it were true that the trustee was compelled to release upon tender of two-thirds of the reasonable

market value of the portions sold or agreed to be sold by the mortgagor, the practical effect would be that the mortgage was not upon the whole but upon two-thirds of the premises, or of its value.    It was the duty of the trustee to make sure that the interests of those who were relying upon his fidelity and competency were not impaired by any releases of the property pledged to the payment of the debts due them; and, therefore, in exercising his judgment whether to release or not, he was compelled to view the matter from the standpoint of a creditor seeking safety and not from the standpoint of the debtor seeking indulgence and liberality.    Viewed from this standpoint, the conduct of the trustee was natural and reasonable.    There was testimony to the effect that the mortgaged premises were not a safe security for an indebtedness of $50,000.    Under such circumstances it would be unreasonable to expect the trustee to approve any sale, and release therefor, unless the price was such and the particular sale such as would not in his judgment impair the remaining mortgage security.    We do not deem it necessary, nor would it subserve any useful purpose as a precedent or otherwise, to discuss the evidence in detail.    It is sufficient to say that we are satisfied that the trustee has violated no covenant in the mortgage, and that his conduct was actuated by a desire to faithfully discharge his trust and not to oppress an unfortunate debtor.    This conclusion makes it necessary to overrule all exceptions to the findings of fact by the Circuit Court, and all exceptions assigning errors of law which are based upon a contrary view of the facts.

The first and third exceptions relate to a question of practice.    The appellant complains that certain letters, bonds and a plat which were introduced in evidence, were not left in the possession of the master, were not filed by him in his report, nor were in the possession of the Court as evidence, and were inaccessible to the defendant or her attorney, and that it was error to proceed with a trial under such a report.    Appellant takes nothing by these exceptions.    It does not in any way appear that she has been

prejudiced. The master reported copies of all the papers introduced in evidence, and this Court has before it the whole of the evidence introduced. It appears, also, that on the same day on which appellant served exceptions to the master's report, complaining in these particulars, written notice was at once given her attorney that all the exhibits referred to as not having been filed had been instantly filed with the clerk. This was about a month before the case was heard on Circuit. It does not appear that any demand was made on the master for any inspection of the exhibits and no request was made of the Circuit Court to compel the production of the original for the defendant's inspection. The master, after taking copies of all such exhibits, returned the originals for safe keeping to the parties introducing them.

There was no error in the provision made in the decree for the payment of taxes on the mortgaged property paid during the pendency of the action. The mortgage expressly provides that in default of payment of taxes by the mortgagor, the mortgagee may pay the same, and the amount so paid should be covered by the mortgage. It was, therefore, proper to provide in the decree for reimbursement of the trustee for taxes paid by him during the pendency of the action.

It is also excepted that the Circuit Court erred in decreeing a sale of the real estate in such parcels as the master may think will secure the best price; whereas, it should have been decreed that said lots be sold separately. We see no reason to disturb the decree in this particular. The master is a very competent officer, and to his discretion the Court committed the duty of selling the property to the best advantage of all concerned.

The exceptions to the Circuit decree are each overruled, and the judgment of the Circuit Court is affirmed.