S. M. CRISWELL, APPELLEE, V. FLORA BELLE MCKNIGHT ET AL., APPELLEES: SECURITY STATE BANK, INTERVENER, APPELLANT.

FILED OCTOBER 10, 1930. No. 27041.

*Sullivan & Wilson,* for appellant.

*N. T. Gadd* and *Schaper & Runyan, contra.*

*T. B. Dysart, amicus curiæ.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and PAINE, District Judge.

PAINE, District Judge.

In an action to foreclose a tax certificate, the intervener bank, appellant herein, filed its amended petition of intervention asking that it be allowed to recover a portion of the taxes which had been paid and redeemed by it some two years prior upon that portion of the land included in the said tax certificate upon which it had already secured a decree of foreclosure on its mortgage at the time of such payment. It asked to be subrogated to the rights of the holder of the tax certificate against the remaindermen to the amount paid by it. The lower court denied the prayer of the intervener and dismissed its amended petition. Intervener appeals.

It will be quite evident, from the involved nature of the transactions between the parties, that a concise statement of the case, including some of the dates, is absolutely necessary for a clear understanding of the legal questions involved.

Two suits were brought in the district court for Custer county prior to the case at bar, and which will be briefly set out as preliminary to the main case.

The plaintiff, S. M. Criswell, appellee herein, began an equity action to foreclose a tax sale certificate against 520 acres of rough and rather unproductive land near Berwyn

in Custer county, originally owned by William McKnight, who died testate, and under his will he had given only a life estate in the above real estate to his widow, Flora Belle McKnight, with the remainder to his nine children, three of whom were Forest McKnight, Virgil McKnight, and Ira D. McKnight. The said Ira D. McKnight, one of the remaindermen, originally purchased the said tax sale certificate upon March 24, 1924, in the amount of $1,093.65, with subsequent taxes of $544.11, upon his mother's failure to pay the taxes. Upon April 25, 1925, he sold and assigned said certificate to the plaintiff, S. M. Criswell, of Glenwood, Iowa.

In his action, S. M. Criswell, plaintiff, made the Security State Bank of Broken Bow, mortgagee of a portion of the land, a party defendant, and the said bank appeared and filed a motion and a demurrer, which raised the question that the action to foreclose had been prematurely brought, and it was therefore dismissed by the plaintiff, S. M. Criswell, without prejudice.

Upon January 17, 1925, the Security State Bank of Broken Bow, the intervener in this case, filed its petition to foreclose a mortgage given by Flora Belle McKnight upon her life estate, and by two heirs, Forest and Virgil McKnight, upon their two-ninths interest therein, the owners of the other seven-ninths not being parties to the mortgage or interested therein. The loan was for $2,140. The land covered by the mortgage was the northeast quarter of section 33, township 16, range 19.

Upon October 12, 1922, Glen O. Perkins, to secure the payment of a loan of $4,307.20, took a mortgage from the same three grantors upon the entire tract of 520 acres owned by William McKnight at the time of his death, this mortgage being a second mortgage as to the northeast quarter of section 33, but being a first mortgage upon the remaining 360 acres in so far as the life estate of the widow and the one-ninth interest of each of said two sons was concerned. Perkins filed an answer and cross-petition to foreclose his mortgage. The bank had its decree of foreclosure entered May 8, 1925, in the amount of $1,481.44, a stay was taken and expired, order of sale issued and sale had, which was set aside.

On November 1, 1926, a second sale was had, at which sale the bank bid, but said Perkins was the highest bidder. On November 24, 1926, the sale was confirmed on motion of the bank and a deed ordered to the purchaser, who was the said Glen O. Perkins, who bid $1,925 for the 160 acres, and out of this the Security State Bank upon application of its attorneys received on its mortgage $1,726.09, being the full sum due thereon, and accepted the same in full settlement, and the surplus of $199.81 still remains in the hands of the clerk of the district court for Custer county.

The said Glen O. Perkins, by purchasing at the sheriff's sale, under the foreclosure of the Security State Bank, the northeast quarter of section 33, and under the decree on his cross-petition the other 360 acres, became the owner in the entire 520 acres of the life estate of Flora Belle McKnight and of the two-ninths interest of two remaindermen. After the confirmation of this sheriff's sale upon its mortgage, the bank by its president upon January 27, 1927, canceled its mortgage of record, acknowledging receipt in full of the money loaned.

Upon July 21, 1927, the said S. M. Criswell, assignee, began a second suit to foreclose his tax sale certificate, being the case at bar, and upon September 23, 1927, filed his amended and supplemental petition therein, in which second action he omitted the Security State Bank as a party defendant for the reason that at that time the northeast quarter of section 33, upon which the Security State Bank had held a mortgage, was not involved, as the bank upon May 22, 1926, had redeemed that portion of the land from the tax sale certificate by paying the county treasurer the full amount of taxes due upon said northeast quarter of section 33 and received his receipt therefor, and the only land left involved in the foreclosure suit on the tax sale certificate was the 360 acres.

Upon October 24, 1927, the Security State Bank was permitted to file a petition of intervention in the tax sale certificate foreclosure, and upon May 2, 1928, filed an amended petition of intervention seeking to recover the taxes which it had paid and redeemed upon May 22, 1926, upon the 160

acres upon which it had held a mortgage, and alleged, among other things: "Intervener made said payment intending that it would have a lien under the terms of its said mortgage * * * with interest at eight per cent, * * * that it, this intervener, became the equitable assignee of an interest in said tax sale certificate."

In the answer to this amended petition of intervention it is alleged that said bank stood by and permitted the northeast quarter of section 33, upon which it had a tax lien, to be sold on its own decree of foreclosure and such sale confirmed, and it is thereby estopped from making any claim in this case in which the northeast quarter of section 33 is in no wise involved, and that the petition in intervention should be dismissed.

It is not clear to the court against which one of the parties the intervener expected, by its evidence, to prove a right of subrogation.

Fraud is alleged by intervener on the part of Ira D. Mc-Knight and S. M. Criswell, but the evidence entirely fails to sustain such charge.

In this case the intervener through its president claims that Glen O. Perkins, bidder at the sale, orally agreed to pay the bank these taxes after he had received his sheriff's deed, but the testimony falls short of sustaining this contention, for Mr. Wilson, the president of the bank, the last time he was on the stand, indicated that Perkins gave no definite promise, and Perkins denies it positively. Mr. Wilson testified that he paid off the taxes on the 160 acres of land he had foreclosed to protect his mortgage lien, as well as to avoid the high interest of the tax certificate. After such payment the sale occurred under the bank's decree, the first sale bringing more than the second, and a small deficit would have occurred if the surplus had been claimed by the bank to apply on the taxes, but the bank has never claimed the surplus from the second sale to reduce its loss, and seeks by intervening in this separate action to recover in part from some one the entire amount advanced by it on taxes on the land under its mortgage.

1. The intervener bank knew that a tax certificate had been outstanding against the property upon which it held its mortgage, because it compelled the dismissal of the first suit brought to foreclose it. The bank could have been assigned the tax certificate or become an equitable owner therein of the part assessed against the land upon which it held a mortgage. *Leavitt v. Bell,* 55 Neb. 57. But the bank could also redeem and cancel such taxes, which latter course it followed. These taxes thereupon became a part of its mortgage debt with rate of interest provided therein. Although its mortgage had proceeded to decree, yet, as its only right to pay the taxes was by reason of this mortgage, equity might have protected it in a supplemental decree or upon proper application have permitted the surplus to be used to refund the bank its taxes, but the burden of bidding the property high enough to guarantee that such surplus would be adequate was upon the bank, which ceased bidding when the surplus was only about $200 and not sufficient to protect it from loss in its payment of taxes. Dysart, Foreclosures in Nebraska (1929) sec. 38; *Kersenbrock v. Muff,* 29 Neb. 530; *Johnson v. Payne,* 11 Neb. 269.

In the leading case of *Young v. Brand,* 15 Neb. 601, this court held:

"The purchaser under a decree of foreclosure of a mortgage obtains the title of all the parties to the suit whether their title be that which is set forth in the pleadings or not."

In the case at bar the appellees argue that the bank parted with the interest it acquired after the decree was entered on its mortgage through the sale and sheriff's deed as effectively as if it had redeemed these taxes prior to filing its petition in foreclosure and set them out fully in such petition, making the amount of the decree include such taxes.

Appellant claims the case of *Young v. Brand, supra,* was decided on the doctrine of *res judicata,* as Roos had purchased the real estate at tax sale August 13, 1877, which ripened into a tax deed after Roos had foreclosed his mortgage without disclosing his possession of a tax certificate on the same property. The court say:

"During all this time the plaintiff's grantor held this lien on the mortgaged property, which could have been joined in that action, but no mention is made of it. It is now too late. The deed is an 'entire bar' against him, and consequently against those claiming under him."

From this statement from the text is based the syllabus therein reading as follows:

"The mortgagee of real estate cannot purchase the mortgaged premises at tax sale prior to the foreclosure by him and after foreclosure take a tax deed and compel the purchaser at foreclosure sale to redeem. The tax lien if foreclosed at all must be foreclosed with the mortgage."

"The purchaser of real estate at judicial sale under the foreclosure of a mortgage buys at his peril, but he acquires all of the interest of the mortgagor and the mortgagee in the mortgaged premises. He acquires that interest as effectually as he would have done by deed from the parties, and he may protect himself under their rights." *Bannard v. Duncan,* 79 Neb. 189.

"A foreclosure sale of lands and tenements, unless the decree otherwise provides, transfers to the purchaser every right and interest in the property of all the parties to the action. *Hart v. Beardsley,* 67 Neb. 145." *Arterburn v. Beard,* 86 Neb. 733.

Abundant means to protect the rights of mortgagees against taxes are provided, but when one fails to avail itself of such means it should ask no more. Its only right to pay these taxes was given in its mortgage, and in *Hitchcock v. Merrick,* 18 Wis. 375, it was held that taxes paid after its decree had been entered could not be recovered by mortgagee, but Nebraska courts have been more liberal and allow relief until the satisfaction of the mortgage is entered. *Johnson v. Payne,* 11 Neb. 269. After that time there is no mortgage lien, and the mortgagee having failed to protect itself when ample means were provided may meet a loss if the surplus is insufficient.

2. As between the life tenant and the owner of the fee it is the duty of the former to pay all taxes. *King v. Boettcher,* 96 Neb. 319. And if the life tenant had bought in such

taxes it would have been considered simply a redemption on her part. *Crawford v. Meis,* 123 Ia. 610.

Appellant demands relief under the right of subrogation. But will such relief cause the taxes to be paid by the life tenant primarily responsible therefor? No. Will the relief if permitted require the payment to be made by the mortgagors? No; not as mortgagors, for the mortgage was absolutely released by the bank.

It is the rule in this state that: "A court of equity will apply the doctrine of subrogation where to refrain from so doing would permit a person who has received the benefit of money paid under a mistake of fact, which discharged a lien upon real estate, to retain such benefit under such circumstances that equity and good conscience dictate its repayment or the preservation of the lien." *Lee v. Newell,* 96 Neb. 209. In that case an agent without authority from his principal, who resided in South Dakota, paid and satisfied the delinquent taxes against land instead of purchasing a tax sale certificate thereon so that the principal might secure title thereto if it was not redeemed. This was clearly a mistake of fact, as the agent thought his principal already had title to the land and equity rightly granted relief prayed. But in the case on trial there was no mistake of fact proved as to any material matter involved.

The doctrine of subrogation may have its source in the Roman law, but the term itself is borrowed from the civil law. It is a creature of courts of equity and includes every instance in which one pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter. Yet this doctrine will never be applied where innocent persons will be injured. 25 R. C. L. 1313, 1322; *Gerseta Corporation v. Equitable Trust Co.,* 241 N. Y. 418, 43 A. L. R. 1320. But, while subrogation is a mode of compelling the ultimate discharge of a debt by the one who in good conscience ought to pay it, yet the rights of one seeking subrogation must have greater equity than the rights of those opposing it. *Western Surety Co. v. Walter,* 44 S. Dak. 112, 24 A. L. R. 1519.

This court has held that subrogation will be enforced to subserve the ends of justice, but will not be applied when it will wrong an innocent party, and where the one invoking it has been grossly negligent. *Hayden v. Huff*, 60 Neb. 625. This case is cited to show the limits of the doctrine, and not to imply that gross negligence is attributable to the bank in this case.

If a supplemental decree had been entered in the foreclosure suit for the amount due the bank upon the taxes it had paid, then if it did not care to bid high enough to cover the amount of its decree, a deficiency judgment could have been secured against the mortgagors, but the bank failed to avail itself of this benefit.

Other propositions are argued at length in the excellent briefs submitted, but to consider them would unduly lengthen this opinion.

The district court had the benefit of seeing and hearing the witnesses testify and, after the trial, briefs were submitted, which the trial court considered in arriving at his finding. The former opinion herein is withdrawn and the motion for rehearing thereon denied. The judgment of the lower court is right and is

AFFIRMED.