## 14131

FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA v. McNIEL *ET AL.*

(181 S. E., 21)

*Messrs. Melton & Belser,* for appellant

*Mr. Henry C. Jennings,* for respondent,

August 23, 1935.

The opinion of the Court was delivered by Mr. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

On October 2, 1930, this suit was begun to foreclose a mortgage held by the plaintiff, executed by the defendant, J. N. Moore, conveying nine tracts of land, situated in Lee and Darlington counties, to secure a debt to $50,000.00 and interest. J. C. McNiel, as receiver, etc., was a party defendant by reason of the facts as alleged in the complaint, to wit, that, pursuant to a decree in a previous case of *R. W. McLendon v. J. N. Moore et al.,* the lands in question were sold and conveyed subject to the lien of plaintiff's mortgage to the First National Bank of Bishopville, by deed of the sheriff of Lee County, dated May 14, 1929, duly recorded, and that said bank had paid two installments on the mortgage debt, and that the bank or its receiver had an interest in the premises by reason of these facts.

The tracts of land conveyed by plaintiff's mortgage were sold pursuant to the decree herein on December 1, 1930, and bid in by the plaintiff for $6,250.00.

R. W. McLendon was not a party to the suit, but after the decree of sale was granted and before the date of the

sale he was, on November 28, 1930, allowed by order of Court, on his petition, to intervene; and the sum of $2,500-.00 was withheld by the Clerk of Court from the proceeds of the sale of the lands in accordance with the terms of the order of Court. The answer of R. W. McLendon sets forth that J. N. Moore executed to R. W. McLendon two mortgages upon the premises, bearing the same dates as the bonds, to secure two bonds dated February 1, 1924, and April 1, 1924, for a total sum of $38,000.00, and that the priority of the liens of these two mortgages was released in favor of the lien of plaintiff's mortgage.

The answer of R. W. McLendon further alleges that in April, 1927, he began an action in Lee County to foreclose the two mortgages held by him, and that during the pendency of this action, prior to the sale of the lands in such suit, he paid to the sheriff of Lee County on February 28, 1928, the taxes upon the real estate in Lee County for the year 1925, amounting to $839.67, and for 1926, amounting to $947.27. The answer further alleges that this defendant has never been refunded for the payment of said taxes, and the First Carolinas Joint Stock Land Bank of Columbia had notice of the payment of said taxes by him. The said real estate was sold in said action subject to the mortgage of the First Carolinas Joint Stock Land Bank of Columbia, and this defendant was not the purchaser of the same at said sale.

By reason of the payment of said taxes by McLendon, he claims that he is entitled under the statute law of the State of South Carolina to a first lien on the real estate covered by the mortgage of the First Carolinas Joint Stock Land Bank of Columbia, which lies wholly and partly within Lee County, S. C., to the extent of the taxes so paid, together with interest thereon from the date of the payment of the same, at the rate of 7 per cent. per annum until paid.

The First Carolinas Joint Stock Land Bank of Columbia was not made a party to the suit to forclose the McLendon mortgage.

On September 10, 1928, the Court in said foreclosure proceedings issued its decree for the sale of all of the lands covered by the McLendon mortgages. The balance due on the McLendon mortgages was $55,958.19, and judgment was granted to him for that amount against the mortgagor, J. N. Moore. No reference was made in said decree to the payment of taxes by the respondent, nor was the amount of taxes paid by him included in calculating the amount due to him. The decree further provided that the mortgage of the appellant constituted the first lien upon a portion of the mortgaged lands, and ordered said lands to be sold, subject to the appellant's mortgage. The decree also directed the sheriff to pay any taxes constituting a lien upon the premises ordered to be sold out of the proceeds of the sale of such premises and to make a report of the sale and of his disbursements in the usual manner.

The lands covered by the McLendon mortgages were sold pursuant to the foreclosure decree on sales day in November, 1928, and the portion of such lands which was covered by appellant's mortgage was conveyed to the First National Bank of Bishopville by the sheriff's deed, dated May 14, 1929, subject to the lien of the appellant's mortgage.

The decree of Judge Stoll was rendered June 21, 1934, and holds that under Section 2831 of the Code of 1932 R. W. McLendon has a first lien upon the premises upon which he paid the taxes set forth as aforesaid, to the extent of the said taxes so paid by him, with interest from the date of payment; and judgment was rendered in his favor for $1,-813.94, with interest from February 23, 1928, at the legal rate, to be paid by the Clerk of Court for Lee County out of the funds in his hands as aforesaid. The Circuit Judge heard this case upon the record, and the testimony as taken by the special referee. The decree sets forth that prior to the commencement of said foreclosure action by McLendon, he had agreed with the First National Bank of Bishopville that upon the completion of said foreclosure action the lands included

in the mortgage to the First Carolinas Joint Stock Land Bank of Columbia and other lands known as the Bell lands should be taken by the said the First National Bank of Bishopville in settlement of certain indebtedness owed by McLendon to the First National Bank of Bishopville. Subsequent to said agreement, and during the pendency of said foreclosure action, and after the report of the special referee was made, on February 23, 1928, R. W. McLendon paid the taxes upon some of the property included in his mortgage and covered by the mortgage of the First Carolinas Joint Stock Land Bank of Columbia; said taxes totaling the amount of $1,813.94.

Thereafter a decree of foreclosure and sale was taken in said foreclosure action, and no reference was made to the payment of taxes by the said McLendon, and said taxes were not included in his order for judgment against J. N. Moore. The property in question was sold under said decree of foreclosure and sale and bid in by the First National Bank of Bishopville for $1,000.00, and it took a sheriff's deed for same. Thereafter the First National Bank of Bishopville suspended operations, and Jno. C. McNiel was duly appointed and qualified as receiver of said bank.

Thereafter the First Carolinas Joint Stock Land Bank of Columbia commenced its action to foreclose the mortgage executed by 'J. N. Moore to it, making Jno. C. McNiel, as said receiver, and others, parties to said action. During the pendency of said action, R. W. McLendon petitioned the Court to allow him to intervene and set up a lien for the taxes so paid by him upon said property, and an order was signed by Judge John S. Wilson, allowing him to intervene and answer, which he did, claiming a first lien upon the property upon which he had paid the taxes, to the extent of the taxes so paid by him, with interest from the date of payment.

Thereafter, by consent of the parties interested, an order was signed by Judge John S. Wilson requiring that, from the proceeds of the sale of the premises upon which the said

R. W. McLendon has paid the taxes, there should be withheld by the Clerk of Court for Lee County, S. C., the sum of $2,500.00, from which the said R. W. McLendon should be reimbursed for the taxes so paid by him, if it were adjudicated that he is entitled to a first lien upon the property upon which he paid the said taxes, to the extent of the taxes so paid, with interest.

The appellant concedes that under Section 2831 of the 1932 Code, the respondent R. W. McLendon acquired a first lien upon the lands covered by his second mortgage for the amount of taxes paid by him on February 23, 1928, and that, if subsequent facts or circumstances had not changed the situation or affected the rights of the parties involved, the respondent would have been entitled to enforce the first lien so acquired against the appellant.

The appellant contends that, by reason of the subsequent actions of the respondent in the foreclosure of his second mortgage upon the lands in question and also by reason of the respondent's negotiations and agreement with the First National Bank of Bishopville which were consummated by the purchase of the lands in question by said bank at the foreclosure sale, the respondent became barred from asserting his lien for taxes against the appellant, and the respondent's lien for taxes became discharged; also that, even if the respondent's claim for taxes advanced by him did not become barred and discharged in the aforesaid manner, at least the respondent should be required to credit the amount of the proceeds of the sale of the lands in question under his foreclosure proceedings against the amount claimed by him for taxes advanced.

The questions raised by the exceptions will now be considered. The first question relates to the effect of the first suit instituted by R. W. McLendon himself as plaintiff, to foreclose the mortgages on the premises. The appellant contends that the respondent R. W. McLendon, Esq., is not entitled, after the foreclosure of his second mortgage,

to assert a lien for taxes advanced by him during the pendency of his suit to foreclose the mortgages held by McLendon.

For the sake of clearness, and to avoid confusion, it is well to state that the facts referred to in this appeal relate to two suits for the foreclosure of real estate mortgages, and to two sets of mortgages, but the real estate about which the controversy centers is identical. In addition to the two sets of mortgages referred to, there was also a statutory lien for taxes on this property. It will save repetition to refer to the mortgaged premises as "the real estate" or as "the property," without describing it each time it is mentioned.

In the first suit, Mr. R. W. McLendon was the plaintiff and the actor therein. That suit was for the foreclosure of two mortgages held by him, and resulted in a decree of foreclosure, under which the land was sold and conveyed to the First National Bank of Bishopville. The taxes were paid by Mr. McLendon on this land during the pendency of the action, prior to the sale of the land and prior to the decree of foreclosure, but no mention was made thereof in the suit or in the final judgment, and the amount of taxes was not refunded. The First Carolinas Joint Stock Land Bank, at Columbia, was not a party to this suit, but the real estate was sold subject to its mortgage as a lien thereon prior to the McLendon mortgage. The statutory lien for taxes paid by McLendon was not asserted in any way in this suit. The land was bought by a third party, and Mr. McLendon received credit for another indebtedness which he owed the purchaser. He testified that he agreed to give the First National Bank of Bishopville as purchaser the land and the Bell place for a certain amount that he was owing them between ten and eleven thousand dollars, incurred in reference to other lands known as the T. E. Bell lands. After he got the title perfected, he proposed that the bank take the Bell lands and the Moore lands for this indebtedness, and accordingly

the deeds were executed to the bank and he was relieved of that indebtedness. The bank got a clear title to the Bell lands and took a deed to the Moore lands subject to the mortgage held by the First Carolinas Joint Stock Land Bank of Columbia, but the only encumbrance that Mr. McLendon gave the First National Bank of Bishopville notice of, at the time of the transaction, was the outstanding mortgage and a little unpaid taxes. After the First National Bank of Bishopville took title to this land, Mr. McLendon never made any demand on the bank for the reimbursement of the tax which he had paid in February, 1928. He testified that he lost sight of his claim, and did not wake up to the situation until after the bank had gone into liquidation the first part of the year 1930. He traded with the bank on a basis without any reference to these taxes. He paid the taxes for the protection of his interests under his mortgage on the land.

In the second suit the First Carolinas Joint Stock Land Bank of Columbia is plaintiff, and it was begun to foreclose its mortgage on the land, which had been acquired by the First National Bank of Bishopville, and which was formerly owned by J. N. Moore. Mr. McLendon was not a party, but by petition intervened, and in his answer asserted his right to the first lien on the land for the taxes paid by him.

1. The first question raised by the exceptions relates to the effect of the first suit for the foreclosure of the McLendon mortgage and the sale of the land in that suit. The appellant contends that the respondent was thereby barred from asserting his lien for taxes against the appellant and that this lien became discharged. There is no doubt that Mr. McLendon had ample opportunity to adjudicate his lien for taxes in the first suit. He had the right to provide in the decree for reimbursement or refund for taxes paid by him during the pendency of the action. In fact, this is the usual practice. *Barnwell v. Marion,* 60 S. C., 314, 38 S. E., 593.

It is also clear that under Section 2831 of the Code he was entitled to a first lien for taxes paid by him only by virtue of the mortgage held by him or by virtue of any judgment held by him against the property of the debtor. The amount paid for taxes is a demand collateral to and dependent upon the mortgage or judgment. It is not an independent right enforceable in a separate action. It has been held in other jurisdictions that a mortgagee's claim for such taxes must be enforced as part of the mortgage debt, and not otherwise, and if, as here, the mortgagee permits the property to go to sale without adjustment of his claim for taxes, he is not permitted to maintain an independent action for debt against the mortgagor or an action in equity for the enforcement of the tax lien by virtue of the law of subrogation. *Carter v. Phillips,* 49 Mo. App., 319, 324; *Northern Finance Corporation v. Byrnes* (C. C. A.), 5 F. (2d), 11; *Criswell v. McKnight,* 120 Neb., 317, 232 N. W., 586, reported also in 84 A. L. R., 1361, page 1387, and cases cited, in exhaustive note.

The reason for this rule is obvious, and its application is not only reasonable and salutary, but is equitable and just. Where a party is plaintiff and forecloses his mortgage on real estate and does not assert his right to a statutory lien for taxes on the property under Section 2831, he is thereby barred from making the claim later in a new or independent action. The payment by Mr. McLendon of the taxes on this land gave him at the time a first lien on the premises under Section 2831, which under the expressed terms of his mortgage shall stand secured by the mortgage. As long as his mortgage is unpaid and remains a lien on the property, the amount due for delinquent taxes thus paid by him is secured by the mortgage and ranks as a first lien on the mortgaged property. It becomes a part of the debt secured by his mortgage as against the mortgagor or judgment debtor, his representatives, privies, or assigns. The statute expressly creates this right. After the lien of the mortgage

becomes extinguished by a sale of the property, in a suit voluntarily begun by the mortgagee to foreclose his mortgage and thereby sell the land free and discharged of the lien of his mortgage thereon, he cannot in good conscience and equity assert the statutory lien. Not only has he discharged the lien of his mortgage, but he has invoked the aid and judgment of the Court to sell the land and to convey it by good title to any purchaser who should buy it at the sale. As long as he occupied the dual position of a mortgagor and the holder of the statutory lien on the property for taxes, he is secured for both debts, his position is established, and his rights safeguarded. The lien for taxes is coexistent with the lien under the mortgage. Such a statutory lien is reasonable and just; the rights of the mortgage creditor are well known and easily enforceable; as long as he retains his mortgage, he is in a position to assert his rights. In this case he did not assert his statutory lien at the time he took the decree of Court to sell the land; the sale of the land by order of Court discharged the mortgage lien; his rights as a mortgage creditor became those of a judgment creditor; and he voluntarily failed to take judgment for the tax debt. A sale of the land divested it of all mortgage or judgment liens held by the plaintiff against the land. As a party to the suit, he is bound by the decree of sale. It is true that he did not make the First Carolinas Joint Stock Land Bank a party to this suit, but he had the right to do so, and voluntarily relinquished his demand as the holder of a first lien for taxes, when he failed to preserve his rights by the decree of sale. He undertook to sell the land subject to the lien of the First Carolinas Joint Stock Land Bank, who was not made a party to the suit and whose rights were not impaired by the same.

The proper practice in this State in actions for the foreclosure of a real estate mortgage is to bring before the Court the parties who may be necessary to a complete termination or settlement of all questions involved in the action. The title of the property sold under the order

of the Court of equity should be clear and free for the purpose of not only giving the purchaser at such sale a good title, but for the further purpose of making the property bring its real worth at the sale. It is best to bring a party into a suit in order to prevent future litigation, which may be disposed of in the first action, and to save a multiplicity of suits. *People's Bank v. Bryant,* 148 S. C., 133, 145 S. E., 692; *Robinson v. McMaster,* 108 S. C., 384, 94 S. E., 879.

The Courts should be particularly jealous of the integrity of judicial sales. This Court has held that where a decree requires the master to deduct from the proceeds of the sale taxes and assessments, a purchaser would be justified in bidding upon the property upon the assumption that all taxes and assessments would be taken care of, including the unmatured installments of a city paving assessment levy on the property, and that he would acquire as clear a title from such tax liens as from the mortgages then being foreclosed. In *re Wilson,* 141 S. C., 60, 139 S. E., 171.

When a man buys a piece of property at a judicial sale, he secures every interest in the property which is covered by the proceedings in the actions. If the Court has jurisdiction and the parties in interest are properly served and made parties to the suit, the title carried at the sale by the decree of Court is a good and sufficient title to such interests as are determined in the suit. This Court held in the case of *Walker v. Oswald,* 151 S. C., 152, 148 S. E., 722, that the plaintiff could have set up his rights to the timber on the mortgaged premises, under a timber deed thereto, and taken a decree of sale of the property without the timber. He did not elect to do this, but three days before the sale conveyed or signed the timber rights to another and gave notice thereof at the sale. This Court held that the plaintiff was bound by the decree of sale, and that he should have applied for a supplemental order or decree or for an order to stop the sale and allowed an amendment to the decree; in other words, the plaintiff did not assert his

known rights to the timber, in his suit to foreclose the mortgage on the land where the timber was located, and that it was too late for him to attempt to give notice of his interest in the property at the sale itself, and that the decree of sale adjudicated, settled and discharged his right to the timber which was sold with the land.

In the present case Mr. McLendon has elected to sell the land in order to foreclose his mortgages thereon, and was instrumental in seeing that the purchaser acquired a good title, in settlement of other debts between him and the purchaser, and did not assert his statutory lien for taxes in that suit. It follows that a demand indivisible in its nature cannot be split so as to authorize several actions against the same land or for the sale of the same identical property by the same party. It is well settled that a party who seeks to enforce his legal or equitable claims must present to the Court all the grounds upon which he expects the judgment in his favor. He cannot enforce his rights by piecemeal. There would be no end to litigation if such a practice were permissible. *Octavius Crips et al. v. Andrew Talvande,* 4 McCord, 20.

In the present case, although Mr. McLendon was not the purchaser of the land at the foreclosure sale of his mortgages, he actively participated in the purchase of the land and in its conveyance to the purchaser, and he was benefited by the purchase of the land in the adjustment of·his own debts. It was to his interest that the First Carolinas Joint Stock Land Bank was not made a party to the suit and that its mortgage would not be foreclosed at that time; and any indulgence under its mortgage was reasonably beneficial to Mr. McLendon in carrying out his transaction with the purchaser. He cannot therefore claim any equity in his favor now. He cannot successfully contend that the taxes which he paid constituted a lien on the property prior to appellant's mortgage and that appellant has not sustained any legal injury by the payment of the taxes by the respondent and

by his demand now for the enforcement of his statutory lien. His position is untenable, for the reason that he actively participated not only in the sale of the land and its purchase, but also voluntarily omitted to make the First Carolinas Joint Stock Land Bank a party to his suit, and thereby postponed the evil day as long as he could and received all of the benefits arising from a prolongation of its mortgage and further extensions on its part. It is too late now for him to set up a lien for taxes on the land, after he has helped to create the present situation. It was primarily the duty of Moore to pay the taxes as the original owner of the land, but Mr. McLendon by his action divested Moore of title to the property. The new purchaser to the land was entitled to a clear title, and Mr. McLendon knew this, so far as his interests in the land were concerned. It would be inequitable for him to claim any further rights in the land under these circumstances. It is unnecessary to consider in detail the exceptions of the appellant.

Under the controlling principles of law above referred to, it is the judgment of this Court that the circuit decree should be reversed, and the judgment should be rendered in favor of the appellant for the payment of the funds now in the hands of the Clerk of Court for Lee County, in this suit, and that the case is remanded to the Circuit Court, with instructions to enter judgment in favor of the First Carolinas Joint Stock Land Bank of Columbia for the payment of the full amount of said funds with accrued interest thereon by reason of the depositing of these funds in the savings department of the National Bank of South Carolina under the terms of the order of his Honor, Judge Philip H. Stoll, bearing date the 21st of June, 1934.

Mr. Chief Justice Stabler and Mr. Justice Bonham and Mr. Acting Associate Justice T. S. Sease concur.

Mr. Justice Carter did not participate.